ABRAHAM ALDERDICE and WILLIAM H. ALDERDICE, trading in the name and style of ALDERDICE & SON, *v.* JAMES TRUSS and SAMUEL TRUSS, trading in the name and style of J. & S. TRUSS.

The 17th section of the English Statute of Frauds, 29th, Charles 2d is not in force in this State.

Definition and explanation of what constitutes a contract in law for the sale of goods, and when such a contract is concluded and complete and binding upon the parties.

SPECIAL count in assumpsit by the plaintiffs against the defendants on a contract for the sale to the former by the latter of eight thousand bushels of Indian corn at eighty-three cents per bushel, which they refused to deliver. Plea. Non assumpsit.

The proof was that on the 7th of March, 1859, Mr. Alderdice, the son and one of the plaintiffs, stepped into the office of the defendants and took a seat by the side of Mr. J. Truss. The first remark observed by the witness was from Mr. Truss to Mr. Alderdice, that he understood he was giving eighty-three cents to outsiders for corn, when he had but eighty cents advertized as his price on his board, and he understood Mr. Alderdice to assent to what he stated as true. Mr. Truss then said that was a good price, and that he would like to sell some at that price. Mr. Alderdice inquired how much he had ;

he replied about eight thousand bushels.  Mr. Alderdice then said he would take it.  After a while he remarked, he supposed it was good, and Mr. Truss replied that it was.  In a short time Mr. Alderdice said to him, " let us go and see it."  Mr. Truss said it was not worth while to go and see it.  They soon after, however, left the office together and in a short time returned into the office, Mr. Alderdice smiling as he came in and exclaimed, " a clean back down by gracious! "  Some conversation then ensued between them, and as the witness understood the point in controversy between them, the one was insisting that he had bought and the other that he had not sold the corn to him.  Samuel Truss came into the office after they returned from the granary and said if James had sold the corn fairly, he was for delivering the whole of it. James said he had no idea of selling more than to make room in the granary for some they were then expecting to receive, and added if Mr. Alderdice insisted on his delivering the corn, he never wanted to have anything more to do with him.  Alderdice's reply was " don't say so Jim, for when I came into the store I had no idea of buying a bushel of you."  James Truss said to him, if he delivered the corn, he should expect him to send his vessel round the next day and take the corn and pay for it.  Alderdice said to him he would send a vessel round the next day and take the corn ; but J. Truss told him he need not do it, for if he did, he would not get it.  No quantity of corn was mentioned or spoken of, except as before stated, no money was offered and no time was mentioned when it was to be delivered, except as had just been stated.  The same statement was substantially made by another witness.  The plaintiffs also proved a demand and refusal of the corn, eight thousand bushels, on the 12th of March, the tender of $6640, for it in funds not objected to by defendants, and that they had a vessel at New Castle on that day ready to receive it.

*Cooper*, for the plaintiffs: The first question to be considered and determined in the case, was, did the evidence prove a contract between the parties. Secondly, if so, was there a breach of it; and if a breach, what was the the measure and amount of damages to which the plaintiffs were entitled. To constitute a contract, there must be an assent to a certain and definite proposition. *Story on Contr. sec.* 378. In this case the requisite proposition was supplied by the defendants when James Truss said, as he did say in substance and effect, to Mr. Alderdice, that he had about eight thousand bushels of corn which he would like to sell to him at eighty-three cents per bushel that morning, and the assent to that proposition was given on the other side, and the contract was complete the moment the latter replied by promptly and conclusively adding " I will take it," which of course imported that he would take it and give that price for it. Nor was this affected in any manner by his afterward inquiring if the corn was good, for that was implied and understood in the mere proposition itself, to sell at the price mentioned. *Humphreys v. Carvalho,* 16 *East* 45. And when no time is mentioned, or agreed upon within which a contract is to be performed, it is not defective for that reason, for in such case the law implies that it is to be performed within a reasonable time, and this will depend on circumstances, such as the customs and usages of the trade. *Blidensburgh et al. v. Welch,* 1 *Baldw. Rep.* 331. If there was a contract, such as had been proved between the parties, then the refusal of the defendants to deliver the corn in five days thereafter, on the demand and tender of the money for it by the plaintiffs, and being then prepared with a vessel at the place to receive it, was a breach of that contract, for which the latter were justly entitled to recover damages, the measure of which would be the difference between what they were to give by the terms of the contract for it, and what they would probably have been able to obtain for it in a short time afterward; and as they had proved that the price of corn had advanced

by that time to eighty-four cents per bushel, and to eighty-seven cents by the 24th of April, the jury would have no difficulty in determining the amount of the damages. He had understood, however, that their right to recover would be resisted on the ground that nothing had been given, or received by way of earnest to bind the parties to it, and that there was no note, or memorandum of it in writing, and was therefore prohibited by the statute of frauds, or was, at least, in contravention of the policy of the statute.   But there was no provision in the statute of frauds of this State, and no policy indicated, or sanctioned by it, which required anything of the kind in such a contract as the present. *Revised Code* 183, 184. 4 *Mod.* 222. 2 *Pr. Wms.* 75. *Sedw. on Stat. and Const. Law*, 9, 11, 429. 3 *Binn.* 295. 1 *Pick.* 43. 5 *Pick.* 168. 12 *Mass.* 537. 4 *Burr.* 20.

*Rodney*, for the defendants : The provisions of the seventeenth section of 29th Charles 2, commonly called the statute of frauds, exists in every State of the Union, except Louisiana. 2 *Kent's Com.* 494.   The argument on the other side was that as the Legislature of this State had re-enacted the fourth section of the English statute, omitting the seventeenth section, it was to be inferred that the latter was omitted by design and was not to be considered as in force here.   But this he did not admit, first, on the authority of Kent just cited, and secondly, because its provisions had become so incorporated into the body of the common law as introduced and applied in this State at an early period, that it had always, he might say, been in force here.   Independent of the statute and any provision contained in it, however, he contended that no contract that was to be presently performed, was valid without delivery, or tender, or earnest to bind the bargain, although it was otherwise, if the contract by its terms is to be performed at a future time. 2 *Black. Com.* 447. *Smith on Mer. Law.* 292. 1 *Dyer* 30. 2 *Kent's Com.* 496.

What will constitute a contract it was for the court to say. Story in his work on contracts says, that Blackstone's definition on the subject, is the best; and his definition is that it is an agreement to do, or not to do, a particular thing on a sufficient consideration. 2 *Black. Com.* 442. The obligation of the contract must be mutual and bind both parties, or it will bind neither. Now, after the plaintiff, Mr. Alderdice, had said he would take the corn at the price mentioned by Mr. Truss, he desired to see it, and went with the latter to ascertain if it was of good quality, the contract was not complete and binding on the defendants up to that moment, because it was not so binding on the plaintiffs; *for no one will pretend that if* Mr. Alderdice had been dissatisfied with the quality of it on seeing it, the plaintiffs would have been bound by the contract, or the offer he made, to take it.

*D. M. Bates,* for the plaintiffs: An offer by one person to sell an article to another for a certain price and the declaration by the other party that he will take it, is a contract. Now, what was the evidence in this case? On the 7th day of March, 1859, Mr. Alderdice stepped into the store of the defendants, when Mr. James Truss inquired of him what he was giving for corn that day; his answer was eighty-three cents per bushel; Mr. Truss then remarked that was a very good price, and he would like to sell some at that price. Alderdice asked how much he had. Truss' reply was, seven or eight thousand bushels. Alderdice rejoined, "I will take it;" and in a few seconds inquired if it was good, to which Truss responded that their corn was generally good, and then at the instance of Alderdice they went out to look at it, and he was satisfied with it. Had the quality been different, it would have been in contemplation of law a misrepresentation of its value by Mr. Truss, and therefore a fraud upon Alderdice which would have absolved him from his offer and the obligation of the contract, and he might have recanted and retracted it; but on that principle and on that ground only. But there was no fraud in that par-

ticular, nor in any other up to that moment. He found on seeing it, that there was no misrepresentation as to its quality, and he was satisfied to take it, and abide by his offer and his bargain, as he was unquestionably bound by law to do. Now, this was clearly a complete contract on the part of Mr. Truss to sell to Mr. Alderdice the quantity of corn mentioned at eighty-three cents per bushel, and of Mr. Alderdice to buy and take it of them at that price; and what was afterward added about going out to see it, did not vary, modify, or in any manner materially qualify it, for the reason which he had already stated, as well as for the reason assigned by his colleague, and which was sustained by the authority which he had cited, that was to say, because it was implied by law upon the offer of Mr. Truss, that the corn was good and merchantable.

*The Court, Gilpin, Ch. J.*, charged the jury, that the 17th section of 29th Charles 2d chap. 3, commonly called the English Statute of Frauds, which provides that no contract for the sale of goods of the value of £10, or upwards shall be good and effectual in law, unless the buyer shall accept a part of the goods sold and actually receive the same, or give something in earnest to bind the bargain, or in part payment &c., was not, and never had been in force, or operation in this State. It had never been re-enacted by the legislature here, although our first statute of frauds was a very early one; nor had it ever been recognized by any judicial decision in this State, as in force here. And as the existing statute in this State, contained no such provision applicable to such a contract, as the one now in question, it was no defence to this action, that there was no part delivery, or earnest given, or taken, to bind the bargain, or part payment, or note, or memorandum in writing concerning it; and even if it ever had been regarded as in force here by usage prior to the passage of our own statute of frauds which re-enacted many of the provisions of the English statute on the subject of sales and contracts, omitting entirely the pro-

35

visions of the seventeenth section, we should have considered that our own statute would have superceded it, because the only law which we now have on the subject is to be found in the written provisions of our own statute. What Chancellor Kent has said in regard to the provisions of the English statutes being in force in this country, in the passage cited from his commentaries, if justly susceptible of the construction which the counsel for the defendants, had given it, must therefore be received with this qualification as to this State.

If therefore, there was a bargain struck, or a complete contract made and concluded between the parties in this case, in regard to the quantity of corn, seven or eight thousand bushels, in question, it would be mutual and binding on both parties, without the delivery of any part of it in token of the whole, or the giving, or taking of earnest, or part payment, or any note, or memorandum of it in writing, to confirm and ratify it. As to the definition of a contract, or when a bargain or contract of sale of goods is considered as made and concluded in law, the counsel do not appear to differ essentially in their opinions. It had been defined to be upon the authority of an elementary writer, an agreement to do, or not to do a particular thing for a sufficient consideration; but no special form of words was necessary for this purpose, for the assent and consent, or the concurrence of the will of the parties contracting, in the matter of agreement between them, however it may be communicated, or expressed by them, constitutes the essence of the contract. On this subject, Chancellor Kent in his commentaries, which are of very high authority, says, " mutual consent is requisite to the creation of the contract; and it becomes binding when a proposition is made on one side and accepted on the other; and on the other hand it is no contract, if there be an error or mistake of a fact, or in circumstances (and he might have added, or any false and fraudulent misrepresentation) going to the essence of it." 2 *Kent's Com.* 477. He also remarks that when the terms

of sale are agreed on and the bargain is struck, and every thing that the seller has to do with the goods is complete, the contract of sale becomes absolute as between the parties, without actual payment by the buyer of them, or delivery by the seller of them, and the property in the goods in such case, with the risk of all accidents to them, from that moment vests in the buyer. He is entitled to the delivery and possession of the goods bought, on paying, or tendering the price for them, and not otherwise, that is to say, when nothing is said at the sale, or the time of entering into the contract, as to the time of delivery, or the time of payment. The payment or tender of the price for them, is in such case, a condition precedent implied in the contract of sale; for he is not entitled to the delivery and possession of the property purchased and cannot sue for them, or upon the contract of sale for a breach of it, until he pays or tenders the price agreed upon for it. 2 *Kent's Com.* 492. What is meant by the foregoing qualification, when the terms of sale are agreed on, and the bargain is struck, and every thing the seller has to do with the goods is complete, is simply this, when the article, or commodity bargained to be sold, is then in readiness to be delivered, and requires nothing further to be done to it, to complete it and fit it for delivery to the purchaser. The time within which such a contract, when made and concluded, is to be performed and complied with by the parties respectively, that is to say, within which the price is to be paid, or tendered by the purchaser on his part, for instance, is a reasonable time after the making of it, and this would depend on circumstances to be considered by the jury, such as the usages and customs of the trade, the position and quantity of the goods to be removed, and the situation and conveniences of the parties with reference to them. Four or five days, however, would not be an unreasonable time for the execution and performance of such a contract as this, provided the jury should be satisfied from the evidence, that it was a contract complete and binding upon the parties, accord-

ing to the definition and explanation which he had endeavored to give them of a contract complete, concluded and binding in law, in the exposition which he had just submitted to them.

If at the time when the parties went out of the office, or store of the defendants on the occasion spoken of by the witnesses, to see the corn, no agreement, or bargain had been made and concluded between them to sell on the one hand and to buy on the other, and the matter was not then fully settled and concluded to their mutual satisfaction and consent, but was still open and to be determined after seeing the corn, then there was no proof of a complete and binding contract between the parties in relation to the matter, because there was no evidence of any contract whatever made between them after they left the office. But if, on the contrary, the defendant, James Truss, in the office and before they left it for this purpose, offered to sell the corn in question, consisting of seven or eight thousand bushels, to the plaintiff, William H. Alderdice, at eighty-three cents per bushel, and he then and there agreed without qualification, or condition, to take it at that price, then it was a complete and binding contract between the parties in this action. And if the latter, then their verdict should be for the plaintiffs; but if otherwise, for the defendants. If for the plaintiffs, the measure of the damage sustained by them would be the difference between the market price of corn at the place of sale on the 7th and on the 12th of March, 1859.

Verdict for defendants.