EMILE LAMS and MARY LAMS, his wife, v. THE F. H. SMITH COMPANY, a corporation of the State of Delaware.

(March 13, 1935.)

LAYTON, C. J., and RODNEY, J., sitting.

*C. Stewart Lynch* (of Biggs, Biggs and Lynch) for plaintiff.

*Josiah Marvel, Jr.* (of Marvel, Morford, Ward and Logan) for defendant.

Superior Court for New Castle County, No. 71, May Term, 1934.

478

RODNEY, J., delivering the opinion of the Court:

The pleas of the defendant having set up the Delaware

Statute of Frauds and the plaintiffs' demurrer having been directed thereto, the question presented is whether the Delaware law (the law of the forum) shall be applied in the case. The answer to this question involves the construction of the nature and character of the Delaware Act. The question is whether, on the one hand, the Act is procedural in nature, having to do with the remedy, or, more properly speaking, the process of machinery by which rights under the contract are litigated or whether, on the other hand, the Act is to be construed as affecting the substance, the formalities or the enforceable validity of the contract itself, as a contract.

The cited Delaware Act is almost the counterpart of the English Act. The leading case adopting the view of the procedural nature of the Statute was *Leroux v. Brown* [1852], 12 *C. B.* 801, 138 *E. R.* 1119. As pointed out in *Emerson v. Universal Products Co.*, 6 *W. W. Harr.* (36 *Del.*) 543, 162 *A.* 779, however, the Delaware Act was adopted in 1752, exactly one hundred years before the decision of *Leroux v. Brown*, and that case is, therefore, entitled to the greatest respect but is in no sense binding on this Court.

In *Leroux v. Brown, supra,* an oral agreement, not to be performed within a year, had been entered into in France and was enforceable there. Suit was brought upon the contract in England and it was held that *Section* 4 of the *Statute of Frauds* applied to the procedure and that the suit could not be maintained unless the contract was in writing in conformity with the English Law. A distinction was drawn between the words of the 4th Section, "no action shall be brought," and those of the 17th Section, "no contract shall be allowed to be good." This distinction has not generally been approved either in England or America and in England the wording of the 17th Section was changed by the "Sale of Goods Act" (1893), so as to read "shall not

be enforceable by action" so as to make the two Sections conform. In construing the Delaware Act we are not confronted with any variaton or distinction between the language of the two Sections originally known as Section 4 and Section 17. Section 17 was not adopted in Delaware (*Alderdice v. Truss, 2 Houst.* 268) until its new language, as found in the English "Sale of Goods Act," was incorporated in our Law in 1933 by the approval of the *Uniform Sales Law, Vol.* 38, *Laws of Delaware, c.* 158, *p.* 570, § 2644-*F.* It would seem that both Sections of our Law must, therefore, relate to the substance or formalities of the contract or both must simply relate to and exclude the remedy.

*Leroux v. Brown* has not been reversed and still represents the law as it exists in England, but this result has not been continued without dissent for Willes, J., in *Williams v. Wheeler* [1860], 8 *C. B.* (*N. S.*) 299, 141 *E. R.* 1181, stated he "was not satisfied that either of the Sections to which reference has been made, warrants the decision." See, also, *Gibson v. Holland,* 1 *L. R. C. P.* 1.

Most of the American decisions discussing the nature and character of the Statute of Frauds, and especially in connection with the conflict of laws, may generally be divided into three groups:

(1) those that adopt the distinction laid down in *Leroux v. Brown* and hold the Statute remedial or procedural;

(2) those that repudiate the distinction yet still hold the Statute remedial; and

(3) those that repudiate the distinction and hold the Statute is substantive.

In the first group may be found cases like *Kleeman v. Collins,* 9 *Bush* (*Ky.*) 460; *Downer v. Chesebrough,* 36 *Conn.* 39, 4 *Am. Rep.* 29; *Boone v. Coe,* 153 *Ky.* 233, 154 *S. W.* 900, 51 *L. R. A.* (*N. S.*) 907; *Third National Bank v.*

*Steel,* 129 *Mich.* 434, 88 *N. W.* 1050, 64 *L. R. A.* 119. These cases are not greatly persuasive, for it is uncertain what measure of reliance is placed upon the distinction (with which we are not here concerned) and which distinction, even in England, seems not now to be entirely endorsed. See *Morris v. Baron & Co., L. R.* 1918 *A. C.* 1. *Wharton on Conflict of Laws,* which treats at length of the distinction in *Leroux v. Brown,* says that (§ 690-*f*) :

"In view of the anomalous results that follow from a strict application of the distinction made in *Leroux v. Brown* and the tendency, already noted, to repudiate that distinction, the better view is to regard a provision of the Statute of Frauds as substantive rather than remedial."

In the second group may be found *Heaton v. Eldridge & Higgins,* 56 *Ohio St.* 87, 46 *N. E.* 638, 36 *L. R. A.* 817, 60 *Am. St. Rep.* 737, and, possibly, *Buhl v. Stephens (C. C.),* 84 *F.* 922, and *Straesser-Arnold Co. v. Franklin Sugar Refining Co. (C. C. A.),* 8 *F* (2d) 601. It may be worthy of remark that *Leroux v. Brown* found it necessary to discover the distinction between the two sections in order to find Section 4 procedural and it may not be entirely clear what that decision would have been without the distinction. *Wharton on the Conflict of Laws,* § 690-*c,* says that most of the cases that repudiate or ignore the distinction hold the Statute to be substantive and, says Wharton, "this position seems to be the correct one if the distinction is to be repudiated."

In the third group holding that the Statute of Frauds should be construed as substantive and not procedural are many well reasoned cases supported by articles by leading educators. *Halloran v. Jacob Schmidt Brewing Co.,* 137 *Minn.* 141, 162 *N. W.* 1082, *L. R. A.* 1917E, 777; *Cochran v. Ward,* 5 *Ind. App.* 89, 29 *N. E.* 795, 31 *N. E.* 581, 51 *Am. St. Rep.* 229; *Matson v. Bauman,* 139 *Minn.* 296, 166 *N. W.* 343; *Miller v. Wilson,* 146 *Ill.* 523, 34 *N. E.* 1111, 37 *Am.*

*St. Rep.* 186; *Goodrich, Conflict of Laws,* § 88; *Restatement, Conflict of Laws,* § 334, "*Statute of Frauds and the Conflict of Laws,*" 32 *Yale Law Journal* 311. See, also, as to *Pennsylvania Act* (33 *PS,* § 1, *et seq.*), being substantive, *Franklin Sugar Co. v. Martin-Nelly Co.,* 94 *W. Va.* 504, 119 *S. E.* 473; *Franklin Sugar Refining Co. v. Holstein Harvey's Sons (D. C.),* 275 *F.* 622; *Franklin Sugar Co. v. William D. Mullen Co. (D. C.),* 7 *F.* (2*d*) 470.

Some Courts in holding their Statute as procedural and as merely affecting the remedy have seized upon the title of the original English Act (1677), "An Act for Prevention of Frauds and Perjuryes," and of the language of Section 4, "no action shall be brought," as indicative of a legislative intent to limit the opportunities of perjury by preventing the introduction of oral testimony when the circumstances of the transaction had become dimmed by lapse of time or other circumstances require a written memorandum. While this is, of course, true, yet the Statute may have a deeper significance, viz.: that long before any questions of admissibility of oral testimony can arise—before any suit is brought—there is such an infirmity in the contract itself as will prevent its enforceability, as a contract by action, and, therefore, "no action shall be brought." In any event the prevention of perjury, insofar as it affects the ordinary contracts of citizens of Delaware, can as readily be accomplished by holding the Statute one of substance as one of procedure.

The Delaware Statute of Frauds requiring an agreement not to be performed within a year to be evidenced by a memorandum in writing is primarily for the benefit of the citizens of Delaware. It was the agreements or contracts of Delawareans which were mainly sought to be protected from the future uncertainties of oral testimony and the Legislature was not merely laying down a rule of evidence for the Courts. If the necessity of writing be

procedural then while the lack of writing would prevent the enforcement of the contract in the Courts of Delaware yet the Delaware citizen would still be liable to be harassed upon the contract and to be faced by oral testimony if sued in the Courts of another State, the Statute of which had been held to be substantive. On the other hand, if the necessity of writing be construed as one of the formalities of the contract, then the absence of the writing would make the contract—not void—but unenforceable in the Courts of Delaware, and, under principle of comity and conflict of laws, unenforceable outside of the State and insure to the citizens for whose benefit the Act was passed the full measure of protection. *Restatement, Conflict of Laws*, § 334.

When *Leroux v. Brown* was determined the English Court did not face the same problems of Conflict of Laws which must be considered in America. In England the whole nation operated under the one Statute of Frauds which controlled all litigation. With us the Statutes of forty-eight different jurisdictions, varying somewhat in phraseology and differing widely in purpose and interpretation, require a large measure of harmony in construction.

It is a general rule of the widest acceptation that the construction and validity of a contract is governed by the law of the place where it is made. We see no reason why this principle should not apply to the formality or necessity of a written memorandum required by the Statute of Frauds. Where two people solemnly enter into a contract which is good, valid and entirely enforceable in that jurisdiction where it is made, it seems to us as an unnecessary and undesirable construction to hold the contract unenforceable in another jurisdiction where one of the parties may have taken refuge unless, indeed, the contract contravenes some rule of public policy decreed by the law of the forum.

Counsel in the present case argue that the Statute of Frauds is both procedural and also an expression of public policy prohibiting an action on a contract not to be performed within a year unless evidenced by a memorandum in writing. This argument is not basically sound and it has received but a small measure of support in other jurisdictions. Its sole support seems to be *Barbour v. Campbell,* 101 *Kan.* 616, 168 *P.* 879, and, possibly, *Heaton v. Eldridge & Higgins, supra,* and *Wharton's Conflict of Laws,* § 390, where it is associated with the procedural nature of the contract. The argument of public policy draws no additional strength from *Emory v. Burbank,* 163 *Mass.* 326, 39 *N. E.* 1026; 28 *L. R. A.* 57, 47 *Am. St. Rep.* 456.

If the Statute is procedural it prohibits actions in Delaware Courts where the contracts sued on do not comply with the statutory requirements. This is true whether the contracts had their origin in Delaware or elsewhere. This result flows from the Statute being procedural and it neither needs nor receives added weight from any argument of public policy. If the Statute be substantive it prohibits action in Delaware Courts upon Delaware contracts which are not within its terms and the result is also that these contracts are not suable in other jurisdictions. If public policy be an argument and, if it be that policy most beneficial for those for whom it is framed, then it would seem to require that the Statute be given a substantive construction. A substantive construction of the Delaware Statute would seem to prohibit action on a non-conforming contract in every case but that of an action in Delaware on a contract entered into in another State. In the final analysis that would be the field of exclusive operation of the argument of public policy. We know of no rule of public policy of so narrow an application.

What we have heretofore said has reference to the Statute of Frauds in its general application to Conflict of

Laws, but a word as to the history, development and construction of our own Act may not be out of place.

At an early period of our Colonial settlement an Act was passed "Concerning Verbal Contracts." This was repealed in 1741 and "An Act about Contracts and Assumptions" was substituted. This in turn was repealed in 1752 and another Act was passed bearing the same title and which is in substantially the terms of our present act. The title "Statute of Frauds" is of much more recent origin, first appearing as a chapter heading in the *Code of* 1852.

Our present act (*Revised Code* 1915, § 2624) makes all promises or assumptions for the debt, or default of another, for an amount under $5.00, good and available in law if proved by the oath or affirmation of the party to whom the promise was made.

*Section* 2625 covers only the same ground as *Section* 2624, viz., the debts or defaults of another, but applies to cases between $5.00 and $25.00 and provides that "No action shall be brought" unless the promise be proved by the oath of a credible witness or a memorandum or note in writing be signed by the party to be charged therewith.

In those cases coming under *Section* 2624 no formality in the contract is necessary. In those cases under *Section* 2625 the promise may be shown by a credible witness (which may mean that the contract shall have been made in the presence of a third party) or the contract must have undergone the formality of being reduced to writing.

*Section* 2626 covers not only the same ground as the preceding section, viz., liability for default of others (in amounts of over $25.00) but also to matters relating to agreements upon consideration of marriage, contracts concerning lands or interests therein, and contracts not to be performed within a year. In all these cases there is required the formality of a writing, by a memorandum or

note thereof, signed by the party to be charged or by an agent authorized in writing.

While all these matters are, in a sense, evidential, yet the intent seems to us to be that in the specified cases contracts must be entered into with the formality required by the Statute—viz., must be in writing.

We find nothing in the words "no action shall be brought" which indicates that the Statute presents a mere rule of evidence. On January 18, 1797, the Legislature used precisely the same language regarding the formality of the manumission of slaves. *Section* 4 of *Chapter* 124-c, *Volume* 2, *Laws of Delaware* (*page* 1323), provides—

> "No action shall be brought whereby to charge any person or persons upon any agreement or contract for the liberation or manumission of any negro or mulatto slave unless such agreement or contract shall be in writing and signed and sealed by the party making the same and shall be attested and subscribed by one or more competent and credible witnesses."

This, to us, indicates the formality with which the contract must be made and not a rule by which the testimony of witnesses was regulated. The increased formality of a seal and the attestation of witnesses go to formality, but add nothing to the distinction between oral and written evidence.

It is true that in *Scotten v. Brown,* 4 *Harr.* 324, the Court said:

> "The statute of frauds introduces no new principle, but a new rule of evidence, requiring that contracts relating to lands shall be evidenced by writing and not otherwise."

This decision was in 1845, some years before the decision of *Leroux v. Brown,* and before any distinction had been made or suggested between the procedural or substantive character of the Statutes, and such distinction was not material in the cited case. We think the Court meant that the Statute of Frauds required contracts relating to land

to be made with increased formality and to be evidenced by writing, and that it was not speaking of the evidence as matter of procedure in the Court nor had in mind that evidence which actually is elicited from the witnesses.

As a matter of fact the line of demarcation between a precedural Statute having to do with the process of enforcement of the contract or the production of evidence and a substantive Statute having to do with the formalities of the contract is, at best, a shadowy one. The formality, or lack of formality, in the making of the contract usually becomes apparent at the time of the introduction of evidence and the real ground of the exclusion of oral testimony of the contract may be upon the ground of the failure to observe the Statutory requirements of formality in the execution of the contract or may involve the difference between oral and written evidence purely as a procedural matter. The distinction between the two natures or characters of the Statute becomes acute when considered in connection with the Conflict of Laws.

Having in mind the clear intent of the Legislature to require contracts, coming within the Statute, to be executed with certain formalities and believing that the purpose of the Statute was not only the prevention of perjuries but the deeper purpose of protection of its citizens from the effect of such perjured testimony, we believe that the greatest measure of protection should be afforded to its citizens and so hold that the statute refers to the substance or formality with which the contract must be executed.

The demurrer is sustained.