## WILMINGTON TRUST CO. v. MUTUAL LIFE INS. CO. OF NEW YORK.

No. 9722.

United States Court of Appeals
Third Circuit.

Argued Jan. 6, 1949.

Decided Sept. 21, 1949.

E. Ennalls Berl, Wilmington, Del. (Wm. S. Potter, Vincent A. Theisen, Wilmington, Del., Donovan, Leisure, Newton, Lumbard & Irvine, New York City, on the brief), for appellant.

Charles I. Thompson, Philadelphia, Pa., James R. Morford, Wilmington, Del. (Louis W. Dawson, New York City, on the brief), for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and KALODNER, Circuit Judges.

BIGGS, Chief Judge.

The appeal at bar is from the denial of the plaintiff's motion for summary judgment and from the granting of a similar motion made by the defendant. The issue presented is the recovery on two life insurance policies. The pertinent facts, none of which is in dispute, follow.

In 1935 Richard C. duPont and the defendant entered into two separate but identical life insurance policies covering the life of duPont. From the applications and from the answers made by duPont on a form signed by him which preceded the issuance of the policies it appeared that duPont was the owner of his own plane, a pilot of motor-driven planes and of gliders or sail planes. Each policy contained an "aviation rider" which provided: "Death as a result of operating or riding in any kind of aircraft, whether as a passenger or otherwise, except riding as a fare paying passenger in a licensed passenger aircraft provided by an incorporated passenger carrier and operated by a licensed pilot on a regular passenger route between definitely established airports, is a risk not assumed under this policy and if the Insured shall die as a result, directly or indirectly, of such operating or riding in an aircraft the amount payable shall be limited to the reserve held at the date of death for the face amount of this Policy and for any dividend additions. Any accumulated dividend deposits will be payable in addition to such reserve."

This rider was stamped on the bottom of the first page of each policy and the policies were issued with each first page so stamped. The stamping of the riders on the policies was expressly agreed to by duPont in a letter written by him to the defendant. The policies also contained a clause stating that the policy was free from restrictions as to occupation, viz., "This Policy is free from restrictions as to occupation." There was no mention of military service in the policies. There were clauses, as required by statute, providing that each policy should be "incontestable" after a stated period. The contents of these clauses are discussed more fully later in this opinion.

In 1943 duPont became a "Special Civilian Assistant" to General Arnold of the Army Air Corps. He was placed in charge of the Army Air Corps Glider Program. A few months later while on a test flight in California in a glider piloted by a Colonel Gabel, duPont was forced to bail out and was killed when his parachute failed to open.

The plaintiff, as executor for duPont's estate, seeks to recover the full face value of the policies which totals $100,000. The defendant seeks to limit its liability to the reserve value of the policies plus dividends as the language of the rider provides. The defendant tendered and paid the reserve value of the policies and the dividends to the plaintiff, the parties nonetheless reserving their respective rights. The plaintiff bases its case below on three principal contentions: (1) the Delaware statute, Rev. Code Del, 1935, Section 496(3),[1] providing that a life insurance policy shall be incontestable under the conditions specified prevents the exemption of an aviation risk from a life insurance policy after the period provided by the statute has passed as here; (2) duPont was within the coverage of the policies since he was engaged in occupational flying when he was killed in view of the cause which put no restriction on occupation; and (3) the aviation riders were not intended by the defendant or duPont to extend to military flights in time

---

1. The statute in pertinent part is set out at a later point in this opinion.

of war. The trial judge rejected the first contention of the plaintiff at D.C.1946, 68 F.Supp. 83, but held that the pleading as then drawn did not permit the adjudication of the second and third points. The plaintiff was permitted to amend and, after further argument, the court below concluded that the riders covered the military flight during which duPont met his death. The ruling in substance was that the plaintiff was not entitled to recover even if it were assumed that he was engaged in military service or on a military flight and that the occupational clause of the policies did not impose liability on the insurer. See D.C.1948, 76 F.Supp. 560.

■■ We shall deal first with the fundamental question inherent in all diversity cases: What law governs? Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 489, 496, 61 S.Ct. 1020, 85 L. Ed. 1477. It is stipulated that the policies were issued and delivered and that the premiums due thereon were paid in Delaware. Each policy provides, however, under the heading, "Policy Settlement", that "All sums payable by the Company under this Policy shall be payable at the Home Office of the Company in the City of New York." While it is the great weight of authority that "The law of the place of performance governs as to matters of performance. * * *", it is also well established that "The question of what is the obligation imposed by a contract of insurance, what are its terms and provisions, has usually rightly been held to be governed by the law of the place of contracting." See Beale, The Conflict of Laws, pp. 1213 and 1210. It is, we believe, the conflict-of-laws rule of Delaware that the law of the state where the insurance contract was made shall govern. See Kane v. Chrysler Corporation, D.C.Del. 1948, 80 F.Supp. 360, citing, inter alia, Lams v. F. H. Smith Co., 6 W.W.Harr. 477, 178 A. 651, 105 A.L.R. 646. It is generally the law that the place where a policy of insurance is delivered

shall be deemed to be the place where the contract was made, here Delaware. Restatement, Conflicts, Sections 317 and 318. We believe that Delaware would adopt this rule. Indeed, such a principle is distinctly hinted at, if not enunciated, in Harris v. New York Life Ins. Co., Del.Ch. 33 A.2d 154. It is our duty, therefore, to determine the instant case in accordance with what we believe the Delaware law would be if it were before the Supreme Court of Delaware.[2]

First, as to the argument based on the "Incontestable Clause" of the policies. The Delaware statute, Rev.Code Del.1935, Section 496(3), provides that all life insurance policies must contain "A provision that * * * the policy * * * shall be incontestable after it has been in force during the lifetime of the insured for a period of not more than two years from its date, except for non-payment of premiums and except for violations of the conditions of the policy relating to naval or military service in time of war and, at the option of the company, provisions relative to benefits in the event of total and permanent disability and provisions which grant additional insurance specifically against death by accident may also be excepted." This statute was enacted in 1931, 37 Del. Laws c. 52, a point which should be borne in mind. Both policies, as we have indicated, contained the provisions required by the statute set out in the following words: "Except for nonpayment of premiums, this Policy shall be incontestable after one year from its date of issue unless the Insured dies in such year, in which case it shall be incontestable after two years from date of issue."

The plaintiff argues that the statute and the incontestable clause in the insurance contracts must be read together to effect the meaning that after two years the insurer must assume all risks except those named in the statute as exceptions. The defendant contends that the incontestable provisions serve only to prevent the company from contesting the *validity* of the in-

2. It is conceded by the parties, however, and with this we must agree, that there is no decision by a state court of Delaware in point.

surance contracts after the statutory period but that the provisions do not compel the insurer to assume all risks except those listed in the statute. Thus, the issue between the parties is clearly defined. The defendant asserts that the incontestable clause of the policies at bar must be interpreted in the light of Metropolitan Life Ins. Co. v. Conway, 1930, 252 N.Y. 449, 169 N.E. 642, 643. The plaintiff insists that the principle of Bernier v. Pacific Mutual Life Ins. Co., 1932, 173 La. 1078, 139 So. 629, 88 A.L.R. 765 must govern.

In the Conway case the Court of Appeals of New York adjudicated the question whether an aviation rider written into a life insurance policy should stand as valid, exempting the insurer from liability, in view of the provisions of the New York incontestable statute,[3] the Act on which the Delaware statute under consideration probably was patterned. Judge Cardozo speaking for an unanimous court pointed out that the incontestable clause was not a mandate from the legislature as to the coverage of a policy but only precluded the defense that the insurance contract was invalid at its inception or became so by reason of a condition broken. Judge Cardozo carefully drew a distinction between a denial of coverage and the defense of invalidity. The Conway case was fully considered by the court below and was quoted in extenso in

its opinion. See 68 F.Supp. at pages 86–87. It formed the basis of the decision of the court below and what Judge Cardozo said need not be repeated again here.

The Bernier case, decided by the Supreme Court of Louisiana, represents the opposite view though in fact Louisiana has no incontestable statute. In the policy before the Louisiana court an incontestable clause was written into the policy which contained provisions[4] which exempted the insurer from liability for a loss arising from an aviation accident except under specified conditions. These provisions were substantially similar to those of duPont's policies. The Supreme Court of Louisiana took the view that the incontestable clause went to coverage, a definition of hazards to be borne by the insurer, stating, 173 La. at page 1084, 139 So. at page 631, 88 A.L.R. 765: "Our opinion therefore is that, inasmuch as only the one exception [relating to non payment of premiums or violation of conditions connected with military or naval service] was made in the provision making the policy incontestable after having been in force for a year, the intention, at least of the insured, was that there should be no other exception."

The Bernier case comes as close to supporting the plaintiff's position as any decision which has been cited to us or which we have found by independent research.[5]

3. The New York statute New York Laws 1923, c. 28, p. 28, in pertinent part was as follows:

"§ 101. Standard provisions. On and after January first, nineteen hundred and ten, no policy of life or endowment insurance shall be issued or delivered in this state * * *; nor shall such policy, except policies of industrial insurance * * * be so issued or delivered unless it contains in substance the following provisions: * * *

"2. A provision that the policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years from its date of issue except for non-payment of premiums and except for violation of the conditions of the policy relating to military or naval service in time of war and at the option of the company provisions relative to benefits in the event of total and permanent disability and provisions which

grant additional insurance specifically against death by accident may also be excepted."

4. The provision was as follows, 173 La. at page 1080, 139 So. at page 629, "It is hereby understood and agreed, in the event of the death of the insured arising, in whole or in part, directly or indirectly, from engaging in aerial navigation except while riding as a fare-paying passenger in a licensed commercial air craft provided by an incorporated common carrier for passenger service, and while such air craft is operated by a licensed transport pilot and is flying in a regular civil airway between definitely established air ports, the only liability under this policy shall be for a sum equal to the premiums paid thereon, and the policy shall thereupon be terminated."

5. We can find no case which directly supports the plaintiff's view. United States

On the other hand in every case in which incontestability under a statute was the direct and unequivocal issue the decision has gone against the plaintiff's point of view and in favor of the defendant's.[6] Many States have incontestable statutes. Indeed only fifteen of the forty-eight have not.[7] Some jurisdictions have statutes under which aviation risks are specifically exempted.[8] Others do not make such an exemption.[9] In all this range of the law there is no case which supports the plaintiff in the instant case.[10]

The purpose of the incontestable statutes and their historical background is too well known to justify extended restatement in this opinion. The plaintiff and the defendant in the case at bar both agree that such statutes were required to prevent an insurance carrier from asserting frivolous defenses based on a contention that some condition of the policy had been broken by the insured. The Conway case was decided before the Delaware statute was enacted. The language of the New York statute,

those of the other States and the Delaware Act are so similar that it must be presumed that the General Assembly of Delaware, there being no decisions of a court of Delaware to the contrary, intended that the Delaware statute should receive the legal construction and have the effect ascribed to such statutes by decisions similar to that of the Court of Appeals of New York in the Conway case. Such is the law of Delaware. See Chicago Corporation v. Munds, 20 Del.Ch. 142, 172 A. 452. Professor Williston has approved the rule of the Conway case. See Williston, Contracts, Rev.Ed. p. 2280. His pronouncements in this field are of high authority in Delaware. After full and careful consideration of the entire problem presented by this phase of the case at bar, we conclude that the State courts of Delaware would apply the rule of the Conway decision.

The plaintiff's second contention is that death resulting from an occupational flight was included in the coverage of the policies. Each policy, as we have

---

v. Patryas, 303 U.S. 341, 58 S.Ct. 551, 82 L.Ed. 883, seemingly squints in the direction of the plaintiff in the instant case, but this favoring glance disappears when one bears in mind, as the learned District Judge aptly put it, 68 F.Supp. at page 88, that "In the Patryas case, the government was held to be contesting the policy of insurance because it was defending against a risk assumed by the terms of the contract, as the court construed the contract."

State ex rel. Republic Nat. Life Ins. Co. v. Smrha, 138 Neb. 484, 293 N.W. 372, is clearly distinguishable.

6. These cases are cited in full in the first opinion of the court below. See 68 F. Supp. at page 86. It is unnecessary to cite them again in this opinion.

7. See note 1(a) of the opinion of the court below. 68 F.Supp. at page 84.

8. See note 1(c), id.

9. See note 1(b), id.

10. A problem of interpretation of the incontestable clause has been raised and adjudicated in the very numerous decisions wherein insurance policies have contained provisions limiting the insurer's liability in case the insured commits suicide. Here the plaintiff finds

more support. Some courts have held that such suicide provisions may be included without violating the incontestable clause. Wechsler v. New York Life Ins. Co., 1931, 147 Misc. 8, 262 N.Y.S. 196; Hall v. Mutual Reserve Fund Life Ass'n, 1902, 19 Pa.Super. 31; Mack v. Connecticut General Life Ins. Co., 8 Cir., 1926, 12 F.2d 416; Carothers v. Atlantic Life Ins. Co., 1942, 178 Tenn. 485, 159 S.W.2d 830. See also a note on this point, 39 Yale L.J. 1050 (1930). Others have reached opposite conclusion. Standard Life Ins. Co. v. Robbs, 1928, 177 Ark. 275, 6 S.W.2d 520; Royal Circle v. Achterrath, 1903, 204 Ill. 549, 68 N.E. 492, 63 L.R.A. 452, 98 Am.St.Rep. 224; Yates v. New England Mutual Life Ins. Co., 1928, 117 Neb. 265, 220 N.W. 285. It should be noted that these cases and most of the other cases with similar holdings were decided prior to the Conway case. In these two lines of cases are found the same opposing views in regard to the incontestable clause as we have noted in connection with the Conway and Bernier cases. Again we have been unable to find a Delaware decision in point. We believe a Delaware court would hold that the cases limiting liability in case of suicide are the better reasoned and would follow them.

stated, contained a clause which provided: "This Policy is free from restrictions as to occupation." The plaintiff seeks to reconcile the occupation clause and the aviation rider by applying the exemption of the latter only to pleasure flights. It argues that the defendant was well aware, as was true, of duPont's work in connection with gliders. It follows, says the plaintiff, that the provisions of the occupation clause would not have been written into the policies unless the defendant intended to cover any loss resulting from duPont's flights in connection with his occupation. The plaintiff contends further that the occupation clause and the aviation rider should be read together, creating an ambiguity which must be resolved in favor of the insured. While it is fundamental that any ambiguity in a life insurance policy must be resolved in favor of the insured, we think that there is no ambiguity created by the use of these two clauses in the policies. We read the occupation clause as leaving duPont free to engage in any occupation without restriction. It had been a common practice for insurers to provide that a policy should become void if certain occupations were engaged in by the insured. Cooley's Briefs on Insurance (Second Edition 1928), Vol. 6, p. 5188; Cyclopedia of Insurance Law (Couch, 1929), Vol. 4, Section 892b, p. 3063. The aviation rider simply provided that if duPont's death was " * * * a result of operating or riding in any kind of aircraft, whether as a passenger or otherwise * * *", with certain exceptions not here pertinent, the resulting loss was not covered by the policies. We believe this to be the plain and unambiguous meaning of the policies. The phrase employed in duPont's policies was not "aeronautic flight" as in Clapper v. Ætna Life Ins. Co., 81 U.S.App.D.C. 246, 157 F.2d 76, or "participating in aeronautics" as in Phœnix Mut. Life Ins. Co. of Hartford, Conn. v. Flynn, D.C. Cir., 171 F.2d 982.

The Supreme Court of Missouri reached a like conclusion in State ex rel. Mutual Life Ins. Co. v. Shain, 1939, 344 Mo. 276, 126 S.W.2d 181. In the cited case the policy under consideration contained an occupation clause very similar to the one here in question. It also contained an aviation rider similar to that of the policies in the instant case but which was intended to limit double indemnity under the policy. After obtaining the insurance the insured became an air line hostess and was killed while on an occupational flight. The court stated that the insured was not a fare-paying passenger and that her death was the result of an act or event which, during its pendency, suspended the liability of the insurer for double indemnity under the circumstances without regard to her occupation. The Shain case is close to the facts at bar. We believe a Delaware court would find it persuasive.

Dupont expressly agreed to the inclusion of the aviation rider in the policies by his letter. Nothing in it indicated that the clause was to be given anything but its literal meaning. Under the circumstances it seems clear that neither duPont nor the defendant understood the clause as the plaintiff now seeks to interpret it. Furthermore, the plaintiff's interpretation would cause the occupation clause to mean that the policies are free from any restrictions as to manner or cause of death while the insured is engaged in any occupation. There is no justification for such an interpretation.

Finally, the plaintiff insists that the aviation rider does not save the defendant from liability for death due to a military flight in time of war. Conceding, without deciding, that duPont was in the military service or on a military flight when he met his death, nonetheless we cannot sustain the plaintiff's contention. It is true that the policies were issued in 1935 when the United States and much of the world was at peace. From this fact the plaintiff argues that death from a military flight was not in the contemplation of the parties when the insurance contracts were made. It is true that the policies contain no word of reference to military or naval service or to the hazards of war and there can be no doubt that if duPont had been inducted into the military or naval service of the United States and had been killed in action in a foxhole rather than in a plane his executor could recover on the policies. It

follows, says the plaintiff, that it may recover since the risk which caused the loss was a war risk and one which was not excluded from the coverage of the policies.

There are cases, notably Conaway v. Life Ins. Co. of Virginia, 148 Ohio St. 598, 76 N.E.2d 284; Sovereign Camp, Woodmen of the World v. Compton, 140 Ark. 313, 215 S.W. 672, and Paradies v. Travelers Ins. Co., 183 Misc. 887, 52 N.Y.S.2d 290, which are very close to the plaintiff's position. The Conaway case and the Sovereign Camp case may perhaps be distinguished because provisions relating to war risk are set out either in the policy itself or in the articles of incorporation of the insurance carrier and therefore some degree of ambiguity, to be resolved in favor of the insured, was present. The Paradies case cannot be so distinguished but the authority of Paradies is greatly diminished by the decision of the Supreme Court of New York, a higher ranking tribunal, in Durland v. New York Life Insurance Co., 186 Misc. 580, 61 N.Y.S.2d 700, 701. In the Durland case, however, the policies contained the express provision: "This policy is free of conditions as to * * * military or naval service * * *" and there was "an interlined imprint" by a rubber stamp reading "'Except as provided by Aviation Rider Attached hereto.' * * *" The rider was in substance the same as that under consideration in the case at bar. The Supreme Court of New York concluded that the policy was not ambiguous in respect to aviation coverage and decided in favor of the insurer. The facts of the Durland case are a little more strongly in favor of the insurer than those of the case at bar because of the exception clause last quoted above. In the instant case, as we have noted, the policies are silent as to risk arising by virtue of war service.

We can find no decision on all fours with the facts of the case at bar. Again we are faced with the task of determining what a Delaware court would do under the instant circumstances. As the learned District Judge has pointed out there is a tendency of the courts of Delaware to follow New York and Massachuetts decisions. We can find no decision of a State court of Massachusetts but that of the United States Court of Appeals for the First Circuit in Green v. Mutual Ben. Life Ins. Co., 144 F.2d 55, is helpful to the defendant and would be given much weight in the Supreme Court of Delaware. But over and above any other consideration we think that a Delaware court would be greatly influenced by the argument that the aviation rider in the policies *sub judice* literally disentitles the plaintiff to recover for it refers to death as a result of operating or riding "* * * in *any kind of air craft, whether as a passenger or otherwise* * * *".[11] This, clearly, would include a flight as a passenger in a military aircraft or an aircraft being prepared for use for a military purpose or mission. We conclude also that a Delaware court would consider the fact that the policies make no mention of military service to be without legal effect either on the right of the plaintiff to recover or the liability of the defendant to pay the sums specified in the policies because the omission of a war risk clause would not serve to nullify the clear provisions of the aviation rider. The fact that the insurer cannot assert the insured's military service to avoid liability on the policies would probably not be construed to mean that the defendant released the benefit of an express limitation of liability in its favor on the risk assumed because the insured was on a military flight or on military service and was killed as a result of that flight or service.

In conclusion we wish to state that the briefs of the parties are models of what briefs should be when prepared by skillful lawyers. Counsel have exhausted the authorities. The appeal was brilliantly argued by both sides.

The judgment of the court below will be affirmed.

11. Emphasis added.