## WOOLLEY v. BISHOP.
### No. 3943.

United States Court of Appeals
Tenth Circuit.
Feb. 11, 1950.

Rehearing Denied March 15, 1950.

John F. Simms, Albuquerque, N. M. and Ralph C. Curren, Los Angeles, Cal. (J. R. Modrall, Albuquerque, N. M. and Frank P. Doherty, Los Angeles, on the brief), for appellant.

Robert J. Woolsey, Tulsa, Okl., and Don G. McCormick, Carlsbad, N. M. (George L. Reese, Jr., Carlsbad, N. M., W. E. Green and J. C. Farmer, Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

F. L. Bishop brought this action in the District Court of Eddy County, New Mexico, to recover a broker's commission which he alleged was due him from Roland Rich Woolley for obtaining a purchaser of certain oil and gas leases in Eddy County, New Mexico. Woolley removed the case to Federal Court in New Mexico because of the diversity of citizenship between the parties. The complaint was in two counts. The court dismissed the second count, and from a judgment in favor of Bishop on the first count in the sum of $17,500.00 together with interest this appeal was taken. The parties will be hereinafter referred to as they were designated in the District Court.

The plaintiff was a resident of the State of Oklahoma and the defendant a resident of the State of California. In substance, the complaint alleges that at the request of the defendant the plaintiff undertook to find a purchaser of certain producing oil and gas leases in Eddy County, New Mexico, which were owned or controlled by the defendant; that the defendant agreed to accept from a purchaser for such leases the sum of $350,000.00 in cash net to the defendant plus $250,000.00 to be paid from 12 per cent of oil produced below 4000 feet on said leases, and that after the payment of such sum of $250,000.00 the defendant was to retain an overriding royalty of 3 per cent of all oil produced below 4000 feet; that the plaintiff was to obtain his commission for selling the property from the purchaser; that the plaintiff produced a buyer ready, able and willing to purchase such leases upon the aforesaid terms, and that the defendant refused to go forward with the sale.

The case was tried to the court without a jury, and after hearing the evidence the court found that the defendant had employed the plaintiff as his agent and broker to procure a purchaser for the property; that on January 22, 1947, and again on February 6, 1947, the defendant agreed with the plaintiff that he would sell the property to a purchaser produced by the plaintiff for the aforesaid consideration. The court further found that on February 19, 1947, the plaintiff procured a purchaser who was ready, able and willing to purchase the property at the price and on the terms fixed by the defendant; that the defendant refused to go forward with the sale of the property, and deprived plaintiff of a commission in the sum of $17,500.00.

There is no dispute between the parties concerning the right of the plaintiff to act as a broker in securing a purchaser of the

property. The defendant does, however, challenge the sufficiency of the evidence to sustain the finding that he at any time agreed to sell the property to a purchaser produced by the plaintiff for the above named consideration. The defendant contends that he never authorized the plaintiff to offer the property to a purchaser for less than $400,000.00 in cash and the additional oil payments and royalties. This necessitates an examination of the evidence.

The plaintiff was a consulting geophysicist and was also engaged in buying and selling oil leases. He had known the defendant for a number of years. The first mention of a sale of the property was contained in a letter written to the plaintiff in June of 1945 by Verne L. Arnold who was closely associated with the defendant and acted as his secretary. The evidence indicates that Arnold owned some interest in the oil property. In this letter inquiry was made of the plaintiff as to whether or not he knew of anyone who might be interested in the purchase of this New Mexico property. It was some time before there was any real action on the part of the plaintiff to find a purchaser, but in the fall of 1946 the plaintiff made inquiry to ascertain whether or not the property was still for sale and was told that it was. Thereafter, the plaintiff was in California on two different occasions and discussed with the defendant and Arnold the possibility of plaintiff finding a purchaser. The price of the property then suggested was $500,000.00 and certain oil payments and royalty interests for oil produced below 4000 feet. At the time there was no production below that depth. In October 1946, plaintiff negotiated with some Louisiana people who seemed to be interested in buying the property but nothing came of this. A short time later a man named Beren indicated an active interest in acquiring the property. Thereafter, there were continuous communications between plaintiff, defendant, Arnold and Beren by letter, telegraph and telephone. Arnold and the defendant furnished for Beren all of the information that was requested concerning the leases, including the production from them and plats describing the property. The price first submitted to Beren was

$400,000.00 cash with oil payments and an overriding royalty. Beren talked to the defendant and visited the field. He later advised plaintiff the leases were not worth more than $350,000.00 cash and the royalty and payments from oil produced below 4000 feet. On January 17, 1947, Bishop wired Woolley: "Unable Close With Beren at $400,000. Believe $350,000 Cash as High as He Will Go. Will Advise You Any New Developments." On January 21st, Arnold wired Bishop, stating "Working With Income Tax Lawyer on Proposal. Will Telephone You Tomorrow." The plaintiff testified that the following day he talked to defendant by telephone and was authorized to close the deal with Beren at $350,000.00 cash and the additional requirements. In the same conversation, the plaintiff told defendant that he did not believe that Beren would pay his commission; that he had a person named Harris who he believed would purchase the property at the price authorized and pay his commission; and that he might be able to get a better deal out of him on oil payments and royalty interests below 4000 feet. He testified that at that time the defendant authorized him to negotiate with Harris and submit the property to him for the same price as that submitted to Beren. Plaintiff, however, understood that he was not authorized to close a deal with Harris without further authority from the defendant and after it was definite that the Beren deal was out. Plaintiff later notified the defendant that the Beren deal was off and that he was discussing the matter with Harris. He testified that on February 3, 1947, he telephoned Arnold and told him that the property had been submitted to Harris on the terms set forth in the complaint which were somewhat better than those submitted to Beren. He further testified that Arnold was told that Harris would purchase the property at this price provided an engineer's report was satisfactory; that the price was confirmed by Woolley, and upon a showing that plaintiff was an authorized agent for the purpose of selling the property. Arnold was asked in this conversation to discuss these matters with the defendant. On the same day Arnold wired Bishop: "Our Telephone Conversa-

tion Discussed with Roland. He Agreeable Your Procedure." On February 5, 1947, at the request of Harris, the plaintiff wrote the defendant a letter in which he set out the exact terms of the offer which had been submitted to Harris. They were the same as stated in the February 3rd conversation. In this letter it was requested that the defendant accept the figures and give two weeks time for completing the sale. The letter also requested: "When you receive this letter, if you are complying with my requests, I would appreciate it if you would send me a wire stating that you are so doing for the benefit of Mr. Roger Harris of Dallas, Texas. Please mention his name in the wire as he is the party who will handle all the transactions." On February 6th, the plaintiff received from the defendant a telegram stating: "Re Roger Harris of Dallas Texas He may have two weeks to make investigation on basis our discussion. Have withheld submitting matter anyone else due my respect and confidence you. Air mailing leter tomorrow." The February 6th telegram was delivered to Harris and he then proceeded to obtain an engineer's report of the property.

On February 15, 1947, Harris notified the plaintiff that the property was acceptable to him and requested that he come to Dallas for the purpose of closing the deal. On February 19th, plaintiff arrived in Dallas and met Harris at the office of his attorney. He immediately telephoned the defendant and reached him at the office of his tax attorney. The plaintiff testified that he advised the defendant that he had closed the deal with Harris and the defendant said that there had been some slip in his tax attorney's office on the capital gain feature of the transaction and that he couldn't go through with the deal and stated: "You wouldn't be dealing with me, you would be dealing with the United States Government. They will get all the money." There was then a long distance telephone conversation between the defendant, his tax attorney and Harris' attorney in Dallas,

which extended over a period of an hour and a half in which the tax liability of the defendant was discussed. Plaintiff went to California in March of 1947 and he testified that he then talked to Woolley in his office, that the tax features of the sale were again discussed on the basis of a $350,000.00 cash payment, and defendant said nothing about the item being $400,000.00. The defendant continued to refuse to close the deal.

The rule is that where one engages a broker to dispose of property on a basis of a price net to him and the broker procures such a purchaser ready, able and willing to purchase the property for such net price and the owner refuses to convey the property to the purchaser, he must respond in damages.[1] It may be that the finding of the court that on January 22, 1947, the defendant authorized the plaintiff to sell the property to Harris for the price stated, is not sustained by the evidence, as it appears the plaintiff understood on that date he was to have further authorization. The plaintiff's testimony, however, is definite as to the offer of February 3rd which Arnold was asked to communicate to the defendant, which he did. The telegram sent to the plaintiff relating to this offer was no doubt intended to authorize him to proceed with Harris on the basis of the offer stated in that February 3rd telephone conversation. Two days later the identical terms were transmitted to the defendant in the letter of February 5th. The wire of February 6th considered with the February 3rd conversation could be construed only as an authorization to plaintiff to proceed on the terms in that letter. The telegram made no reference to the inadequacy of the consideration. The statements and conduct of the defendant and his attorneys on February 19th and thereafter do not indicate that there was any objection to the terms submitted in the February 3rd conversation and the February 5th letter. We cannot say that there is no substantial evidence to sustain the

1. 8 Am.Jur., Brokers, Sec. 148; 12 C.J.S., Brokers, § 17; Calkins v. F. W. Woolworth Co., 8 Cir., 27 F.2d 314, 319; Kaercher v. Schee, 189 Minn. 272, 249 N.W. 180, 88 A.L.R. 294; Cases collected, 88 A.L.R. 299; Coffman v. Crookshank, 140 Cal.App. 192, 34 P.2d 1067; Atkinson v. Pack, 114 N.C. 597, 19 S.E. 628.

finding of the court or that it is clearly erroneous. In fact, it would appear from all the evidence that the transaction failed not because of inadequacy of consideration but upon tax consequences.

 Immediately preceding the trial of the case, the defendant, by amendment to his answer, pleaded the statute of frauds. The defense, as presented, is very broad and general but we shall assume that it is sufficient to raise the question. The provisions of the general statute of frauds requiring contracts for the sale or purchase of real property to be in writing have no application to a broker's contract of employment to negotiate for an owner in a transaction . for the sale of real property and do not prevent a broker acting under oral authority from recovering a commission if a buyer is produced who is ready, able and willing to purchase the property upon the terms of the owner and the owner refuses to sell.[2] The defendant contends that if there was a contract between the parties it was governed by the California law which makes such brokerage contracts void unless in writing (Sec. 1624(5), Civil Code of California). We are satisfied that this was not a California contract. Richmond-Carcia Oil Co. v. Coates, 5 Cir., 17 F.2d 262. The understanding between the parties created a unilateral contract. Plaintiff did not agree to bind himself to do anything. He was not obligated to find a purchaser, and a contract between the plaintiff and defendant did not result until he did find a purchaser ready, able and willing to buy the property at the price authorized by the owner. The validity of such a contract is to be determined by the law of the state where the contract was consummated, that is the place where the purchaser was found, not the place where the real estate is located.[3] The place where plaintiff produced a purchaser was in Texas. Harris lived in Texas, agreed to accept the offer of the defendant there, and the plaintiff went to Dallas for the purpose of closing the deal. It was in Texas that the defendant was notified that Harris would accept the offer.

 The Texas statute provides that "No action shall be brought in any court in this state for the recovery of any commission for the sale or purchase" of oil and gas leases unless there be sufficient written memorandum to satisfy the statute. Title 65, Art. 3995a Vernon's Civil Statutes of Texas. This type of statute is generally referred to as a "no action" statute. The authorities are in hopeless conflict as to whether or not an oral contract entered into in a state having such a statute may be enforced in another state which has no such statutory limitations.

Some authorities and writers conclude that all statutes requiring contracts to be in writing go to the substance of the contract and become part of it and are effective in all jurisdictions.[4] Others, including the Texas courts, hold that the statute is remedial and procedural and establishes only a rule of evidence for the proof of such contracts within that jurisdiction and may be enforced in another state.[5] In Brooks v. Yarbrough, supra, this court, in considering the Texas "no action" statute said:

"The Texas statute of frauds, above quoted, is substantially the same as the fourth section of the English statute. It will be noted that this statute does not say that the promise shall be illegal, nor that the contract shall be void, but it says, 'No

2. 8 Am.Jur., Brokers, Sec. 22; Anderson v. Hill, 196 Okl. 304, 164 P.2d 623; Carter v. McCall, 193 S.C. 456, 8 S.E.2d 844, 151 A.L.R. 641; Cases collected, 151 A.L. R. 648.

3. Restatement, Conflict of Laws, Sec. 323; 12 C.J.S., Brokers, § 24; 11 Am.Jur., Conflict of Laws, Sec. 167; Beale, Conflict of Laws, Vol. 2, p. 1067; Williston on Contracts, Vol. 1, Sec. 97; Brown v. Ford Motor Co., 10 Cir., 48 F.2d 732; Howell v. North, 93 Neb. 505, 140 N.W. 779; Canadian Industrial Alcohol Co. v.

Nelson, 8 W.W.Harr. 26, 38 Del. 26, 188 A. 39, 54; Alexander Film Co. v. Pierce, 46 N.M. 110, 121 P.2d 940.

4. Yale Law Journal, Vol. 32, p. 311; Lams v. F. H. Smith Co., 6 W.W.Harr. 477, 36 Del. 477, 178 A. 651, 105 A.L.R. 646; Cases collected, 105 A.L.R. 652; 161 A. L.R. 820.

5. Beale, Conflict of Laws, Vol. 3, p. 1618; Brooks v. Yarbrough, 10 Cir., 37 F.2d 527, 533; Continental Collieries v. Shober, 3 Cir., 130 F.2d 631; Cooper v. A.A.A. Highway Express, Inc., 206 S.C.

action shall be brought in any of the courts' etc

"The fourth section of the English statute and the statutes employing substantially the same language as the fourth section of the English statute, generally, have been held to apply to procedure and remedy only, and not to go to the obligation or validity of the contract. Heaton v. Eldridge, 56 Ohio St. 87, 46 N.E. 638, 36 L.R.A. 817, 60 Am.St.Rep. 737; Boone v. Coe, 153 Ky. 233, 154 S.W. 900, 901, 51 L.R.A.,N.S., 907; LeRoux v. Brown, 12 C.B. 801, 138 E.Reprint 1119; Buhl v. Stephens, C.C., 84 F. 922, 925, 926; Barbour v. Campbell, 101 Kan. 616, 168 P. 879, 880; Downer v. Chesebrough, 36 Conn. 39, 4 Am.Rep. 29; Third Nat. Bank of New York v. Steel, 129 Mich. 434, 88 N.W. 1050, 1051, 1052, 64 L.R.A. 119; Pritchard v. Norton, 106 U.S. 124, 134, 1 S.Ct. 102, 27 L.Ed. 104; Ohlendiek v. Schuler, 6 Cir., 30 F.2d 5, 6; Daniels v. Rogers, 108 App.Div. 338, 96 N.Y.S. 642; Story's Conflict of Laws (7th Ed.) § 576; 27 C.J. p. 124, § 3.

"It follows that the statute of frauds of Oklahoma (Comp.St.Okla.1921, § 5034 [15 O.S.1941, § 136]), rather than of Texas, governs this action brought in the United States District Court for the Northern District of Oklahoma."

It should also be noted that the wording of the Texas statute dealing specifically with brokerage contracts for the sale of oil and gas leases and interests in oil, is different from that of the general statute of frauds. Vernon's Ann.Civ.St. art. 3995. The general statute states "No action shall be brought * * *", while the special statute says "no action shall be brought * * * *in this state* * * *". The latter section could be construed as limiting actions only to those brought in the state of Texas. We do not, however, decide the case upon the wording of the statute. We adopt the rule in the Yarbrough case and hold that the Texas statute is remedial and procedural only and does not prevent a suit on a Texas oral contract in New Mexico. There is nothing in the New Mexico statutes or court decisions which would prevent the enforcement of the contract in New Mexico. Williams v. Engler, 46 N.M. 454, 131 P.2d 267.

■ Defendant contends that the court erred in awarding $1895.00 additional damages to the plaintiff as interest, according to the statutes of New Mexico, from the date of the breach of the contract. It is argued that interest should not have been allowed for the reason that the commission which Bishop was to receive was never agreed upon between plaintiff and defendant. This is true, but defendant did agree that he would sell the property to a purchaser produced by the plaintiff who was ready, able and willing to purchase the property on his terms and that the plaintiff would obtain his commission from the purchaser. There is no conflict in the evidence as to the amount of the commission which the plaintiff would have received. The purchaser testified that he had agreed to and would have paid the customary 5 per cent broker's commission on the $350,-000.00 cash portion of the consideration, had the deal been consummated. Except for the default of the defendant, the plaintiff would have been paid a commission of $17,500.00. The damages were fixed and certain at the time of the breach. In such cases interest should be allowed.[6]

Finding no error in the proceedings, the judgment is affirmed.

372, 34 S.E.2d 589, 161 A.L.R. 814; Pettus Oil & Refining Co. v. Taber, Tex.Civ. App., 153 S.W.2d 700, 705; Fisher v. Wilson, Tex.Civ.App., 185 S.W.2d 186, 189.

6. New Mexico Statutes, 1941, Anno. 53-603; Restatement, Contracts, Sec. 337; Williston on Contracts, Vol. 5, Sec. 1413; 12 C.J.S., Brokers, § 123; Hartford Accident & Indemnity Co. v. City of Sulphur, 10 Cir., 123 F.2d 566; Hartford Accident & Indemnity Co. v. Collins-Dietz-Morris Co., 10 Cir., 80 F.2d 441, 445; Continental Oil Co. v. Fisher Oil Co., 10 Cir., 55 F.2d 14, 17; State Trust & Savings Bank v. Hermosa Land & Cattle Co., 30 N.M. 566, 240 P. 469, 480; McDonald v. Bernard, 87 Cal.App. 717, 262 P. 430; Jack E. Cloyd Co. v. Taber, 102 Cal.App. 384, 282 P. 979; Klepper v. American-La France Fire Engine Co., 104 Cal.App. 249, 285 P. 1048, 1051.