Samuel J. STEIN, Plaintiff,

v.

PULASKI FURNITURE CORPORATION

and

Morris Novelty Furniture Corporation, Defendants.

Civ. A. No. 1181.

United States District Court
W. D. Virginia,
Roanoke Division.

April 24, 1963.

E. Griffith Dodson, Jr., Roanoke, Va., for Samuel J. Stein.

E. Milton Farley, III, Richmond, Va., for Pulaski Furniture Corp.

M. H. MacBryde, Jr., Martinsville, Va., for Morris Novelty Furniture Corp.

MICHIE, District Judge.

The defendants in this case have filed answers which include the affirmative defense of the statute of frauds. All the parties have stipulated that the alleged contract, upon which the action is based, was, if ever made at all which the defendants do not admit, an oral contract made in North Carolina for a five-year period of employment and that no written memorandum was made relating to that contract. Since no proof is needed to establish the above admitted facts, a question of law is raised as to the effect of Va.Code § 11–2 which reads, insofar as material, as follows:

"*When written evidence required to maintain action.*—

"No action shall be brought in any of the following cases:

\* \* \* \* \* \*

(7) Upon any agreement that is not to be performed within a year;

"Unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged thereby, or his agent; but the consideration need not be set forth or expressed in the writing, and it may be proved (where a consideration is necessary) by other evidence."

At the outset it should be noted that no provision in North Carolina's statute of frauds (Gen.Statutes of N.C. § 22–1 et seq. 1943) relates to contracts not to be performed within a year, and that therefore, assuming no other legal imperfections, the oral contract was valid and enforceable under the laws and in the courts of North Carolina.

It is also true that under well-accepted principles the formal validity of a contract is normally determined by the law of the place where the contract was made. Scudder v. Union National Bank, 91 U.S. 406, 23 L.Ed. 245 (1875); 4 Michie's Jurisprudence, "Conflict of Laws", § 21, p. 53. However, when a contract action is brought in another forum, it must be litigated under the procedural (or "remedial") rules of that forum. Hogue-Kellogg Co. v. G. L. Webster Canning Co., 22 F.2d 384 (4 Cir. 1927).

The question before this court, then, is whether the above quoted Virginia statute is procedural or remedial in nature or whether it is concerned with the substantive validity of oral contracts. Put in another way, the problem is whether the statute proclaims oral contracts which fall within its scope merely unenforceable by the court machinery of the state of Virginia or whether it is saying that such contracts are void ab initio and of no effect wherever suit may be brought upon them.

Even though the statute is found to be procedural the laws of Virginia must be applied rather than any federal

rule of procedure since the decision of this question will "significantly affect the result of" this litigation. Guaranty Trust Company of New York v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079; Macias v. Klein, 3 Cir., 203 F.2d 205.

■ Without going into too much background, it may be said, briefly, that the problem before the court had its origin in the English Statute of Frauds and the case of Leroux v. Brown, 12 C.B. 801 (1852). In that case the court drew a distinction between § 4 of the English statute (which contained the expression: "no action shall be brought" and upon which § 11–2 of the Virginia statute is based) and § 17 of the English statute (which contained the expression: "no contract * * * shall be allowed to be good") and held that § 4 was procedural or remedial in nature and would bar the enforcement in English courts of an oral contract not to be performed within a year even though that contract was perfectly valid and enforceable in France where it was made. Since many states in this country have adopted the English statute in whole or in part, some including only § 4 or § 17 and some both, and since the logic behind the Leroux distinction is somewhat questionable when examined closely in the light of the purpose of the statute of frauds (see Lams et ux. v. F. H. Smith Co., 6 W.W.Harr. 477, 36 Del. 477, 178 A. 651, 105 A.L.R. 646 (Del.1935)), a mass of contradictory legal precedent and scholarship has developed relating to this question (see Lams et ux. v. F. H. Smith Co., supra, and Judge Parker's dissenting opinion in Simmons Co. et al. v. Crew et al., 84 F.2d 82 (4th Cir. 1936), in which the majority of the court did not think it necessary to reach the statute of frauds question, for exhaustive citations on this point).

Unfortunately there is apparently no direct precedent in Virginia upon which a holding may be based.

Counsel for the defendants have argued that the General Assembly of Virginia has seen fit to incorporate both § 4 and § 17 of the English statute into the present Virginia Code as § 11–2 ("No action shall be brought * * *") and § 11–1 [1] ("Every contract * * * shall be void * * *") respectively and that this court must respect the mandate which this legislatively preserved distinction of language represents. In the absence of a case from Virginia's Supreme Court of Appeals on the question it seems necessary to examine the history of the Virginia sections to see if it throws any light on the legislative intent.

But when the history of these statutes is traced back through the years to their origins it becomes apparent that § 11–1 is not directly related to § 17 of the English Statute of Frauds, but was enacted in 1887 to rectify an odd development in Virginia's recording laws which had put a purchaser of land under an unrecorded oral contract in a stronger position than a purchaser of land under an unrecorded written contract. Floyd v. Harding et al., 28 Grat. 401 (1877). Under the Floyd case, supra, a purchaser of land under an unrecorded *oral* contract could get title good against all the world through the equitable doctrine of part performance, while all *written* contracts for the sale of land had to be recorded or be "void as to creditors and subsequent purchasers for valuable consideration without notice" (Chap. 118, § 5 Va.Code of 1849). The object of § 11–1's predecessor (§ 2463 of the Code of 1887) was to abrogate the Floyd holding and place a purchaser of land under an unrecorded parol contract, as to purchasers for value without notice and creditors, in the same situation

---

1. "§ 11–1. *Contracts void as to creditors and purchasers unless in writing.*— "Every contract, not in writing, made in respect to real estate or goods and chattels in consideration of marriage, or made for the conveyance or sale of real estate, or a term therein of more than five years, and every bill of sale or contract for the sale of goods and chattels when the possession is allowed to remain with the seller, shall be void, both at law and in equity, as to purchasers for value and without notice and creditors."

as a purchaser under a writing who had failed to record it under the recording acts. Norfolk & Portsmouth Traction Co. v. C. B. White & Bros., 113 Va. 102, 73 S.E. 467 (1912). Clearly this provision is not a successor to § 17 of the English Statute of Frauds. And in fact, although the word "void" is used in § 11-1 the contract is not made completely void but only void "as to purchasers for value and without notice and creditors".

■ However, the conclusion that § 17 of the English statute has not been incorporated into the laws of Virginia and that § 11-2 is the only true descendant of the old English statute does not foreclose a conclusion, from an analysis of §§ 11-1 and 11-2, that the Virginia legislature definitely intended § 11-2 to be procedural, or remedial, in nature and not to go to the substantive validity of an oral agreement that is within the statute. A statute almost identical to the present § 11-2 and including a provision with respect to oral contracts for the sale of land has been a part of Virginia law since 1785. It was of course in effect when the Floyd case, supra, was decided and when § 11-1's predecessor was passed in 1887. If Virginia's legislature had felt that the predecessor of § 11-2 went to the substantive validity of oral contracts for the sale of land and pronounced them void and of no effect whatever, then there certainly would have been no need to pass § 11-1's predecessor, which merely provided that oral contracts for the sale of land were void as to purchasers for value without notice and creditors. I therefore believe that the fact that the legislature did enact § 11-1's predecessor is a clear indication that the lawmakers of this state did not consider that Virginia's statute of frauds (the present § 11-2) prevented oral agreements falling within it from having any validity whatever but rather viewed it as a remedial statute which merely denied anyone the right to enforce such agreements in the courts of Virginia. In the light of the lack of any direct legal precedent, I consider this demonstration of legislative intent of the utmost importance in reaching my decision that § 11-2 deals only with the legal enforceability and not with the substantive validity of oral agreements which fall within its scope.

Before listing the other reasons for reaching such a conclusion, it might be well to note that in the Lams case, supra, which is so heavily relied on by the plaintiff, the court did not have to contend with any more legislative intent than was inherent in the adoption of the phraseology "no action shall be brought * * " in the Delaware statute. For the 17th section of the English Statute of Frauds had never been made part of Delaware law (see Alderdice v. Truss, 2 Houst. 268, 7 Del. 268 (1860); Lams et ux. v. F. H. Smith Co., supra) and apparently no other statutory interplay which might exhibit legislative intent was present in Delaware's laws. In such a situation this court might well have reached a decision in accord with the Lams approach.

In addition to the above legislative analysis, there are several other factors which are persuasively relevant to a decision on this close question of law: (1) The phraseology of § 11-2 itself. "No action shall be brought * * * " is simply procedural language. It is oriented around legal enforcement rather than the actual validity of a contract. (2) To the same effect is Judge Parker's dissenting opinion in ⸰Simmons Co. et al. v. Crew et al., supra, which, while a dissent, does not indicate a difference of view in the court on this point since the majority did not think it necessary to reach this point. (3) And finally the fact that Virginia's Supreme Court of Appeals has said, albeit in a different context, that

"The statute [11-2's predecessor] * * * does not make void the contracts therein mentioned, but simply provides that no action shall be brought upon them." Burruss v. Hines, 94 Va. 413, 419, 26 S.E. 875 (1897).

■ For all the foregoing reasons it is the decision of this court that § 11-2 of the Code of Virginia is procedural, or remedial, in nature and accordingly no

action may be brought in this state on an oral contract of employment not to be performed within a year, regardless of its validity and enforceability in the jurisdiction where it was made.

An order will be entered dismissing this action for the reasons stated in this opinion.