CLARICE H. RICHE, Plaintiff, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Defendant.

Supreme Court, Trial Term, Cayuga County, December 28, 1948.

*George M. Michaels* for plaintiff.

*Richard C. A. Drummond* for defendant.

GILBERT, J. The above-entitled action was brought on for trial before me at the regular Cayuga Trial Term for the month of October, 1948. A jury trial of the issues was waived by the parties; an agreed statement of facts handed up to the court; and it was stipulated that only a question of law remained to be decided by the court from the stipulated facts, the pleadings, the policy of insurance and documents attached thereto.

The defendant also withdrew from the consideration of the court its defense in respect of the rescission and settlement between the parties.

The facts as agreed upon are briefly as follows: On or about March 7, 1941, the defendant insured the life of Wilson A. Riche in the sum of $5,000 by its Policy No. 13-468-910-A, and the plaintiff herein is the widow and duly designated beneficiary thereunder. That said policy was in full force and effect on October 1, 1943, on which date the insured, Wilson A. Riche, was killed when struck by enemy antiaircraft fire or machine gun fire from enemy pursuit planes while aloft in and a member of the crew of a United States army air force bomber plane on a bombardment mission near Wiener-Neustadt, Austria. That due notice and proof of death have been furnished defendant and that the insured and this plaintiff had duly performed all conditions of the insurance contract on their part to be performed to and including October 1, 1943. That attached to and made a part of the policy was the following:

" Special Provision As To Aeronautics

" Supplemental Agreement attached to and made a part of Life Insurance Policy No. 13-468-910-A issued on the life of Wilson A. Riche.

" Death as a result, directly or indirectly, of travel or flight in any species of air craft, except as a fare-paying passenger on a licensed air craft piloted by a licensed passenger pilot on a scheduled passenger air service regularly offered between specified airports, is a risk not assumed under this Policy; but, if the Insured shall die as a result, directly or indirectly, of such travel or flight, the Company will pay to the beneficiary the reserve on this Policy, less any indebtedness thereon.

METROPOLITAN LIFE INSURANCE COMPANY<br>J. P. BRADLEY

Dated March 7, 1941.                         Secretary ".

That on or about February 13, 1947, the said policy was surrendered by plaintiff and the policy reserve accepted by her under a mistake of fact as to the manner of death of said Wilson A. Riche, and that on or about February 19, 1947, the defendant delivered its check to plaintiff in the sum of $249.71, the amount of the adjusted reserve, which said check was negotiated by plaintiff on February 24, 1947.

The question of law to be answered is simply this: Did the insured's death result directly or indirectly from a cause excepted by the above-quoted provision of the insurance contract?

An insurance contract, as any other type of contract, should be construed according to the intention of the parties. This intention must so far as possible be gathered from the language used by the parties to the contract and from the entire contract, which, in the case of a life insurance policy, includes the application therefor. (*Drilling* v. *New York Life Ins. Co.*, 234 N. Y. 234; *Auerbach* v. *Maryland Casualty Co.*, 236 N. Y. 247, 252.) If ambiguous language is used or terms subject to more than one meaning, that meaning will be ascribed which is least favorable to the company. (*Houlihan* v. *Preferred Accident Ins. Co.*, 196 N. Y. 337; *McMartin* v. *Fidelity and Casualty Co.*, 239 App. Div 296, 300.)

The language used in the provision of the policy in question seems to be simple, clear and explicit. It is evident that something more than merely death occurring while in a species of aircraft is necessary to bring the event within the excepted risk. The death must be the result, directly or indirectly, of the travel or flight. Death need not necessarily occur while in the aircraft, as where a plane is forced down at sea, as in *Green* v. *Mutual Benefit Life Ins. Co.* (144 F. 2d 55), and drowning or death from exposure followed; or where death followed injuries

sustained in a crash landing or after bailing out, as in *Wilmington Trust Co.* v. *Mutual Life Ins. Co.* (76 F. Supp. 560).

In any consideration of this " Special Provision as to Aeronautics " clause, we get back to the problem of what risks did the parties intend to exclude, or, to put it another way, what risks did the plain language used comprehend?

In the insured's application certain questions are asked in reference to the insured's participation in aviation or his intentions in that regard. To these the insured answered that he belonged to a local flying club but had never been up in their plane; that he did not expect to engage in flying in any pilot or student pilot capacity in the future or in the capacity of observer as a member of any airplane crew; nor did he intend to enter the aviation industry.

At the time that the application was made and the policy issued, the Second World War was in progress and, even though this country was not yet engaged, we were preparing, and it was certainly not beyond the range of possibility that we would become involved.

In view of the questions and answers contained in the application and despite world conditions, it may be said that defendant was apparently not concerned with the problem of war risk at the time the policy was issued, since it contains no provisions in that regard. That being the case, it cannot be doubted that plaintiff would be entitled to recover the full amount of the policy had the assured died as a result of enemy action while serving on the land or sea. The question to be considered herein is whether or not the " Special Provision as to Aeronautics " contained in the policy was intended to operate to prevent a recovery where the assured died as a result of enemy action while in the air.

In *Green* v. *Mutual Benefit Life Ins. Co.* (*supra*), the United States Circuit Court of Appeals, First Circuit, Judge MAGRUDER writing for the court has this to say in discussing the meaning of a somewhat similar clause (p. 57): " The natural and obvious meaning of the aviation clause in the case at bar is that the insurer declines to assume those extra risks of death ordinarily associated with aerial flight. Where death admittedly results from the operation of one of those familiar and popularly understood risks there cannot be any issue of proximate causation for a jury to determine."

As pointed out above, the defendant apparently did not concern itself with the exclusion of war risks at the time the policy

was issued, even though it must have been apparent at that time that such risks might well materialize. Defendant did seek to exclude certain aviation risks. The risks it intended to exclude would seem logically to be only the risks ordinarily attendant upon flight, and not special war risks which it could have but did not choose to exclude. If assured had died in an explosion of the airplane (*Burns* v. *Mutual Benefit Life Ins. Co. of Newark,* 79 F. Supp. 847), in a crash (*Hyfer* v. *Metropolitan Life Ins. Co.,* 318 Mass. 175), or by reason of a situation in which he was and could reasonably have been expected to be placed following a crash (*Green* v. *Mutual Benefit Life Ins. Co., supra*), or even in a case where the plane never appeared at its destination and the only likely explanation of such failure was a crash (*Barringer* v. *Prudential Ins. Co. of America,* 62 F. Supp. 286, aff. 153 F. 2d 224), plaintiff could not recover. But in the case here submitted quite a different situation prevails. Assured's death was not the result of any event proceeding out of the flight of the airplane. Assured died from enemy fire just as certainly as though he had been an infantryman occupying a foxhole in the front lines. Death was the result of a deliberate act of a third person, and was not connected in any way with any risk ordinarily associated with aerial flight.

Again, in the opinion in *Green* v. *Mutual Benefit Life Ins. Co.* (*supra,* p. 58), Judge MAGRUDER writes in discussing the decision in *Bull* v. *Sun Life Assur. Co.* (141 F. 2d 456, certiorari denied 323 U. S. 723), " It may reasonably be said that death by the deliberate act of a third person is not one of the risks ordinarily associated with aerial flight. Travel in a plane brought the insured to the place where he met his death by enemy action, but he might just as well have been brought to that place by boat or otherwise."

In the case of *Bull* v. *Sun Life Assur. Co.* (*supra*) where a nearly identical exclusion clause was involved, the Seventh Circuit Court of Appeals allowed a recovery on two grounds: first, that the flight had ended, and second, that death was not the result of flight but of a war risk. Certiorari was denied by the United States Supreme Court, and it is possible only to speculate on the grounds for the action of the Supreme Court.

A more recent case, *Boye* v. *United Services Life Ins. Co.* (168 F. 2d 570), a United States Court of Appeals for the District of Columbia decision, offers strong support to plaintiff's contention herein. In that case, a pilot was a crew member of a plane which never returned from a bombing mission and was

believed lost as a result of enemy antiaircraft fire, although no information was available as to the circumstances surrounding its disappearance. The United States Court of Appeals for the District of Columbia, in reversing the District Court of the United States for the District of Columbia, speaks as follows (p. 571): "If Lieutenant Boye's death resulted directly or indirectly from gunfire, as the District Court thought and we think it probably did, we think it resulted from a risk of war that the policy did not exclude and not from a risk of aviation that the policy did exclude. We think the case is much the same as if the policy had excluded death ' due to operating or riding in an automobile ' and the insured had been killed by gunfire while driving an army car."

As suggested in the *Boye* case (*supra*) the court intimated in the *Barringer* case (*supra*) that it would have allowed a full recovery if there had been reason to believe that assured met his death by reason of gunfire from a German submarine.

Had assured's death resulted from eating poisoned food while in flight or from an attack by another crew member or passenger, with a gun or otherwise, while in flight, it could not logically be argued that a full recovery would be precluded by reason of the " Special Provision as to Aeronautics " found in the policy. Such things could just as well have happened anywhere else in the world, and in such cases death would obviously not be a result of risks of travel or flight in the aircraft. The situation with which we are confronted here is not different in principle. Assured could have died as a result of enemy action in many places on the face of the globe.

The case of *Thoma* v. *New York Life Ins. Co.* (30 North. Co. Rep. [Pa.] 369), is a holding directly opposed to the decision about to be reached herein. The circumstances out of which the insured's death occurred are almost identical with the facts in the case at bar. However, the wording of the aviation clause is somewhat different, and in that case the application contained a military and naval blank required to be filled out by the insured. The aviation clause excluded the risk of death while " operating etc.". The insured was killed while operating a bomber plane. The discussion in the *Thoma* case (*supra*) is carefully developed, but the reasoning does not, in the final analysis, commend itself to this court.

Counsel have been very co-operative with each other and with the court in an exhaustive search of the reported cases on the question involved herein. Most of the reported cases have been

decided by the Federal courts. None, with the exception of the *Thoma* case (*supra*), has had a factual background similar to the case at bar. Enough of these cases have been cited herein to indicate the legal points involved.

This court concludes that the death of the insured, Wilson A. Riche, was the direct result of an act of war or of violence on the part of a third person or third persons and that his death was not the result, directly or indirectly, of travel or flight in any species of aircraft.

It follows, therefore, that plaintiff herein is entitled to recover the full amount of the policy in question and in the manner therein provided.

The stipulated statement of facts should suffice as the findings of fact and the conclusion of law is as above indicated.