## WILMINGTON TRUST CO. v. TRAVELERS INS. CO.

## DU PONT v. TRAVELERS INS. CO.
## WILMINGTON TRUST CO. v. AETNA LIFE INS. CO.

### Civ. Nos. 487, 488, 500.

United States District Court
D. Delaware.

Nov. 28, 1952.

488

E. Ennalls Berl and Frank O'Donnell (of Berl, Potter & Anderson), Wilmington, Del., and Donovan, Leisure, Newton, Lumbard & Irvine, New York City, for plaintiffs.

James R. Morford (of Morford, Bennethum, Marvel & Cooch), Wilmington, Del., and Charles I. Thompson and Philip Patterson (of Ballard, Spahr, Andrews & Ingersoll), Philadelphia, Pa., for defendants.

1. Reargument was denied by the Court of Appeals. Certiorari was denied, 339 U.S. 931, 70 S.Ct. 665, 94 L.Ed. 1351.

**LEAHY, Chief Judge.**

Four suits on life insurance policies containing aviation exclusion clauses were instituted. They were issued by the Mutual Life Insurance Company of New York, the Travelers Insurance Company and Aetna Life Insurance Company. The insured was Richard C. duPont. He was killed in a glider accident in 1943. The first case prosecuted was against Mutual Life. All the facts were stipulated and both plaintiff and defendant moved for summary judgment. I decided in favor of Mutual Life, [Wilmington Trust Co. v. Mutual Life Ins. Co.] D.C. Del., 68 F.Supp. 83. Thereafter the complaint was amended setting forth a new theory for recovery. After further argument I gave summary judgment for Mutual Life, D.C.Del., 76 F.Supp. 560. The Court of Appeals affirmed, 3 Cir., 177 F.2d 404.[1]

There are now for decision two cases against Travelers and one against Aetna. Both plaintiffs and defendants moved for summary judgment on a stipulation of facts which are substantially the same as were present in the Mutual Life case, supra. There is concededly one difference. In the Mutual Life case, as the policies had been delivered in Wilmington, Delaware law controlled. The policies in the cases *sub judice* were delivered in New York. It is agreed by all New York law controls here.

1. The crux of plaintiffs' cases is that the aviation exclusion clause was not intended to refer to war aviation; and that the policies are ambiguous. Under the law of New York, plaintiffs argue, the determination of what the parties actually intended is for the trier of the facts to be gathered from the policies as written and the circumstances in which the contracts of insurance were made. Under this theory, plaintiffs ask that a jury find what the parties agreed to, i. e., since it is for the jury to determine, in all the circumstances, whether the aviation clause in the policies was intended to exclude war flying. Yet, at the same time, plaintiffs seek summary judgment.

A further petition for rehearing by the Court of Appeals was denied.

Plaintiffs argue their motions for summary judgment should be granted prior to reaching the question of actual intention because the problem for decision involves the doctrine of ambiguity. In short, the position of plaintiffs is that the stipulated facts, as a matter of law, present such a case of ambiguity that a judgment for plaintiffs should be entered without the necessity for a consideration by the jury of the question of intention of the parties. As I interpret plaintiffs' argument, it is this: If, under the law of New York, this case is such that a Court, sitting in New York, would direct the jury to return a verdict for plaintiffs upon the ground that reasonable men could not fail to find ambiguity sufficient to overcome defendants' theory as to the intention of the policies of insurance, plaintiffs' motions for summary judgment should be granted. In fact, plaintiffs say the insurance companies told the insured that the aviation exclusion clause of the policy referred only to civilian aviation. Before further discussion of the contentions of the parties, a reference to the facts must be made.

2. The Travelers issued two policies to Richard C. duPont in July 1935. In his application for $100,000 of insurance duPont stated he was a manufacturer of sail planes —gliders. The insurance company then presented to him an "Aviation Supplement", which was a part of his application. It stated he owned a motor-driven plane and that he was a qualified pilot for such a plane as well as for gliders. In fact, he had 900 hours as a flight pilot and hundreds of hours as a passenger. With this information, Travelers issued the two policies. Attached to the first policy was a "Supplemental Agreement", executed by the insured and Travelers which read:

"Death as a result of service, travel or flight in any species of aircraft, *except as a fare-paying passenger,* is a risk not assumed under this contract; but, if the Insured shall die as a result, directly or indirectly, of such service, travel or flight, the Company will pay to. the beneficiary the reserve on this contract."

The same Agreement was made with respect to the second policy, except that the *italicized words above, i. e., "except as a fare-paying passenger"*, were omitted. The first page of the policies provided:

"This contract shall be incontestable after it shall have been in force during the lifetime of the Insured for a period of two years from its date of issue except for non-payment of premiums, and except for violation of the conditions of the contract relating to military or naval service in time of war if such service shall be restricted by indorsement hereon at date of issue. It is otherwise free from conditions as to residence, occupation, travel or place of death."

These riders were made part of the policies; and at the bottom of the first page this notice was stamped: "Insurance Modified By Aircraft Rider 46785, Etc." The difference in the two aviation clauses, defendants argue, is that in one policy Travelers assumed the risk of death if the insured were to die while flying as a fare-paying passenger; while in the other policy Travelers refused to assume any aviation risk whatsoever.

3. Richard C. duPont applied thereafter for a $35,000 policy with Ætna. Here, again, he executed a questionnaire called "Report on Aircraft Ascensions". In this document he gave the same information with respect to his aviation and glider activities. A rider attached to the Ætna policy provided:

"This agreement is subject to special condition relating to aeronautics endorsed on the reverse of this page."

As in the second policy issued by Travelers, the Aetna policy contained this rider:

"Special Condition Relating to Aeronautics "This policy is issued and accepted upon the express agreement that death of the insured as the result of service, travel or flight in any species of aircraft is a risk not assumed hereunder; but, if the insured shall die as a result, directly or indirectly, of such service, travel or flight, the Company

will pay to the beneficiary the full reserve on this policy, less any indebtedness hereon.

"The provision regarding incontestability, hereinafter set forth, is hereby amended by adding thereto a provision that 'The defense, by the Company, of any claim hereunder on the ground that death of the insured was the result of service, travel or flight in any species of aircraft shall not be construed to be a contest of this policy.' "

The incontestability provision of the Ætna policy provided:

"This policy and the application herefor, a copy of which application is attached hereto and made a part hereof, constitute the entire contract between the parties hereto, and it shall be incontestable after it has been in force during the lifetime of the insured for a period of two years from its date of issue except for non-payment of premium."

Richard C. duPont's tragic death was succinctly described by Judge Biggs in his opinion in the Mutual Life case, 3 Cir., 177 F.2d at page 405:

"In 1943 duPont became a 'Special Civilian Assistant' to General Arnold of the Army Air Corps. He was placed in charge of the Army Air Corps Glider Program. A few months later while on a test flight in California in a glider piloted by a Colonel Gabel, duPont was forced to bail out and was killed when his parachute failed to open."

In the first opinion I held that the Delaware Courts would follow Metropolitan Life Insurance Co. v. Conway, 252 N.Y. 449, 169 N.E. 642, where Mr. Justice Cardozo, drawing the distinction between denial of coverage and a defense of invalidity, held an aviation clause was valid and such a limitation of liability was not a contest under the New York incontestable statute.

4. The point of the matter at bar, plaintiffs argue, is that the flight of the glider in which Richard C. duPont was a passenger was a military flight and while he was in military service; hence, the avia-

tion riders should be construed as referring only to civilian flying. I have already held and now hold, for the reasons set forth in the Mutual Life case, that at the time of his death Richard C. duPont was engaged in military service. The question, therefore, comes down to this: Did the failure of the defendant insurance companies to exclude in their policies war risks from coverage render the aviation clauses ambiguous because the insured may have thought such aviation riders referred only to civilian flying? I do not think the Mutual Life case controls the present matter for decision. In the Mutual Life case I held, as the Court of Appeals recognized, 177 F.2d at page 406, "that the riders covered the military flight during which duPont met his death. The ruling in substance was that the plaintiff was not entitled to recover even if it were assumed that he was engaged in military service or on a military flight and that the occupational clause of the policies did not impose liability on the insurer." See D.C., 76 F.Supp. 560. In so holding, I applied Delaware law and not "the ambiguity doctrine" as announced by the New York courts. Moreover, "there was no mention of military service in the policies" in the Mutual Life case; in the Travelers case there was. In any event, if New York law is applicable, the question of ambiguity is applicable to both the Travelers and the Aetna cases.

5. Plaintiffs argue defendants' motions for summary judgment should be denied because, as New York law applies, what the parties actually intended by the contracts of insurance is a fact question for a jury and it is not for the court to decide where the provisions of the contract contain an ambiguity. Reliance is had upon New York cases which hold where there is such ambiguity that men might disagree upon the meaning of words and what they were intended to cover in a policy of insurance, the factual issue is for a jury. A reading of the New York cases supports the following statement of the rule in that state, viz.: Under New York law the finding of the intention of the parties, where there is ambiguity, is for the trier of the facts after an examination by it

of the policy of insurance and the surrounding circumstances under which the contract of insurance was made. Lamb v. Norcross Brothers Co., 208 N.Y. 427, 429, 102 N.E. 564; Schweinler v. Earl, 183 App.Div. 673, 686, 171 N.Y.S. 866, 875; Pioneer Credit Corp. v. San Miguel, 275 App.Div. 636, 92 N.Y.S.2d 328; Medex, Inc., v. Cisatlantic Corp., Sup., 98 N.Y.S.2d 269, affirmed 277 App.Div. 1115, 101 N.Y.S. 2d 736; Rasmussen v. New York Life Ins. Co., 267 N.Y. 129, 195 N.E. 821. This rule is based upon *ambiguity*. In the case of a *plain* contract, i. e., where there is nothing present to obscure the intention of the contracting parties, there is another rule. Judge Goddard has stated it succinctly in quoting from the New York Court of Appeals, Brainard v. New York Central R. W., 242 N.Y. 125, 151 N.E. 152, 45 A.L.R. 751, in Patent & Licensing Corp. v. Olsen, D.C., 71 F.Supp. 181 at page 182:

"Construction of a plain contract is for the court. The intention of the parties is found in the language used to express such intention. Cf. Hartigan v. Casualty Co. of America, 227. N.Y. 175, 124 N.E. 789. If the court finds as a matter of law that the contract is unambiguous, evidence of the intention and acts of the parties plays no part in the decision of the case. Plain and unambiguous words, undisputed facts, leave no question of construction except for the court. The conduct of the parties may fix a meaning to words of doubtful import. It may not change the terms of the contract.' (Cases cited.)" As I have come to be convinced the policies are not *plain* contracts, the rule of Judge Goddard does not apply to the cases at bar. I think the contracts of insurance do contain an ambiguity. It is upon the basis of the New York law plaintiffs argue defendants' motions for summary judgment should be denied. This, because it is for the jury to determine, under all the facts, whether the aviation clause was intended to exclude war flying. All the facts as to the issuance of the policies, the status of the insured as in the military and the circumstances of his death have all been stipulated—all, except the intention of the parties when the policies were issued. The fact of intention is in controversy. Therefore, under Frederick Hart & Co. v. Recordgraph Corporation, 3 Cir., 169 F.2d 580, and Alamo Refining Co. v. Shell Development Co., D.C.Del., 84 F. Supp. 325, defendants' motions for summary judgment will not be granted.

6. Plaintiffs argue that their motions for summary judgment should, however, be granted because the stipulated facts show, as a matter of law, such ambiguity that the court, as a matter of law, should decide in favor of plaintiffs without any consideration by the jury of the intention of the parties; and as a matter of procedure, under the stipulation of facts, plaintiffs' motions for summary judgment are tantamount to a motion for a directed verdict. See, Sartor v. Arkansas Nat. Gas Corp., 321 U.S. 620, 624, 64 S.Ct. 724, 88 L.Ed. 967. I am not convinced that, as a matter of law, on the basis of the record before me, the aviation exclusion clause was not intended by the parties to refer to death while engaged in war aviation. The ambiguity and the factors involved are for the trier of the facts. A jury should, therefore, consider several of the master facts of the cases at bar.[2] For example:

7a. It is conceded defendant insurance companies had a conclusion not to protect themselves against war risks in times of peace.[3] The policies were issued in 1935,

---

2. In my earlier opinion in the Mutual Life case I wrote, D.C.Del., 76 F.Supp. 560, 565: "Had the insurer put in the policy that it meant to exclude from coverage military as well as civilian flights, it is obvious that duPont would be excluded. It seems to me the insurer has done precisely the same thing when it excluded all flights except those as a fare-paying passenger on a commercial airliner." At the time the Mutual Life case was presented, no argument was had as to the application of New York law (i. e., "ambiguity provisions") as it was conceded Delaware law applied in that case. In the application of New York law to the cases at bar, my former written words should accordingly be modified if an attempt is made to apply them to the matter for present decision.

3. Stip. pars. 26, 27, 28.

in time of peace, when the United States was not aware of any foreseeable war. On this basis, plaintiffs might argue to a jury that the parties at the time of the issuance of the insurance contracts had in mind an aviation clause which was intended to cover peacetime civilian flying. Each policy contained provisions "except for violation of the conditions of the contract relating to military or naval service in time of war, *if such service shall be restricted by endorsement hereon at date of issue*. It is otherwise free from conditions as to * * * occupation, travel or place of death". *The policies contained no restrictions of any kind on "military or naval service in time of war" endorsed upon the policies.*[4] On this basis plaintiffs will argue to a jury that duPont on reading his policies had every reason to conclude that he was free to engage in time of war in military flying.

b. The insured was required to answer an aviation questionnaire which was attached to the policies. This was known as an "Aviation Supplement". On this particular paper, at the end, there appeared the following: "For U.S. Army or Navy risks use Special Form". Nothing was said about restriction on military flying. From this, plaintiffs argue (and wish to argue to a jury) that as plainly as a reasonable man could be expected to understand, defendants by their policies told duPont, the insured, that the aviation exclusion clause referred to civilian flying and that aviation exclusion as to Army and Navy flying risks was (as it was not) to be dealt with specially.

The factual argument which plaintiffs desire to urge upon a jury takes the following form:

In 1935, when the policies were issued, the insured was 25 years of age. He had already obtained eminence in the glider field. He visualized their potential in war. It is unthinkable, argue plaintiffs, that duPont as "a young American in his situation, realizing (a realization which was afterward more than borne out) the potentiality of the glider craft as a weapon in warfare,

his own skill and knowledge in that field already attained," could have intended, in entering the contracts of insurance, to cut himself off from the future possibility of rendering critical service to his country. Plaintiffs argue that the courts of New York with their liberal attitude in favor of the insured would not rule against such a person under these circumstances. Much reliance is had on Paradies v. Travelers Ins. Co., 183 Misc. 887, 52 N.Y.S.2d 290, where the New York Court held that limitation of coverage of the aviation clause did not apply to war flying because, as here, no exceptions as regards military service in time of war were imposed on the policy. Since the insurance company had failed to do this, the New York Court decided the aviation clause covered civilian flying only. The Paradies case was cited by the Court of Appeals in Wilmington Trust Co. v. Mutual Life Ins. Co. of New York, 3 Cir., 177 F.2d 404, at page 410, which considered its force had been spent by Durland v. New York Life Ins. Co., 186 Misc. 580, 61 N.Y.S.2d 700, 701. But, in Durland the military and naval service condition clause was specifically subordinated to the aviation rider attached to the policy. And, see Conaway v. Life Ins. Co. of Virginia, 148 Ohio St. 598, 76 N.E.2d 284; Sovereign Camp of Woodmen of the World v. Compton, 140 Ark. 313, 215 S.W. 672. There is much authority, known to both this court and the Court of Appeals at the time the Mutual Life case was decided, holding an aviation rider does not exclude death resulting from a military flight. The cases where the policies contained aviation exclusion clauses and no war clauses relating to military service are Green v. Mutual Benefit Life Ins. Co., 1 Cir., 144 F.2d 55; Hyfer v. Metropolitan Life Ins. Co., 318 Mass. 175, 61 N.E.2d 3; Knouse v. Equitable Life Ins. Co. of Iowa, 163 Kan. 213, 181 P.2d 310, 314; Thoma v. New York Life Ins. Co., 30 North Co., Pa., 369; McKanna v. Continental Assur. Co., 165 Kan. 289, 194 P.2d 515, 517; Burns v. Mutual Benefit Life Ins. Co. of Newark, D.C., 79 F.Supp. 847; Janco v. John Hancock Life Ins. Co., 164 Pa.Super.

---

4. Emphasis added.

128, 63 A.2d 138; Richie v. Metropolitan Life Ins. Co., 193 Misc. 557, 84 N.Y.S.2d 832, 834. But, in none of these cases, as in the Mutual Life case where Delaware law was applied, was there in issue the application of New York law with its doctrine of ambiguity and the resolution of such by a jury instead of by the court. Cf. Conaway v. Life Insurance Co., 148 Ohio St. 598, 76 N.E.2d 284, where it was held a life insurance policy which excludes civilian aviation risks will not be construed to exclude military aviation risks unless clearly so expressed and, the further holding, in case of ambiguity a contract of insurance should be construed strictly against the insurer and liberally in favor of an insured when the contract has been written and prepared by the insurer. See, too, Janco v. John Hancock Mutual Life Insurance Co., Mun.Ct.Phila. Legal Intelligencer 1-14-48.

■ 8. I have already decided that at the time of his death the insured had a military status. D.C.Del., 76 F.Supp. 560. The stipulation of facts afford an ample showing to support the legal conclusion I reached in the Mutual Life case that duPont at the time he met his death had a military status. I do not intend to go over this phase of the case again.

9. So far I have discussed the case as it deals with Travelers. The only difference between the Mutual Life case and Travelers and Ætna has to do with the exception in favor of a fare-paying passenger, which is not in the second Travelers or the Ætna policies. Also, the Ætna policy did not contain a direction to use a special form as to flying in the Army or Navy. Therefore, it would appear the ambiguity argument in dealing with the "fare-paying passenger" provision and the military risks covenants are inapplicable to the Ætna case. Nevertheless, plaintiffs argue: "The remainder of the argument upon points of ambiguity is just as pertinent to the Ætna case as to the Travelers cases, and in spite of the somewhat stronger case as to Travelers for the application of the ambiguity rule of New York, is nevertheless applicable to the Ætna case."

■ My conclusion is that defendants' motions for summary judgment should be denied and plaintiffs' motions should likewise be denied. Plaintiffs are, however, under the applicable law here, entitled to have any questions of ambiguity in the policies determined by a jury. At this stage of the case, I think these are the questions for disposition by the fact-finders: 1. are the aviation clauses referrable only to civilian flying? 2. what was the intention of the parties as to war flying coverage?

Orders may be submitted in accordance with the foregoing.