WILMINGTON TRUST COMPANY, etc.

v.

The TRAVELERS INSURANCE CO., etc.

Allaire Crozer DU PONT

v.

The TRAVELERS INSURANCE CO., etc.

WILMINGTON TRUST COMPANY, etc.

v.

AETNA LIFE INSURANCE COMPANY, etc.

Civ. A. Nos. 487, 488, 500.

United States District Court
D. Delaware.

Sept. 14, 1954.

E. Ennalls Berl and Frank O'Donnell (of Berl, Potter & Anderson), Wilmington, Del., and Donovan, Leisure, Newton, Lumbard & Irvine, New York City, for plaintiffs.

James R. Morford (of Morford, Bennethum & Marvel), Wilmington, Del., and Charles I. Thompson and Philip Patterson (of Ballard, Spahr, Andrews & Ingersoll), Philadelphia, Pa., for defendants.

LEAHY, Chief Judge.

These cases were tried by juries. The juries were unable to reach verdicts and were discharged. During trial, defendants' motions for directed verdicts were denied. Defendants now move under F.R. 50(b), 28 U.S.C., for judgments in accordance with their motions for directed verdicts. Similar motions were filed by plaintiffs but were later withdrawn. The history of this litigation may be found in the note.[1]

1. Wilmington Trust Co. v. Mutual Life Ins. Co., D.C.Del., 68 F.Supp. 83; D.C., 76 F.Supp. 560, affirmed 3 Cir., 177 F. 2d 404, certiorari denied 339 U.S. 931,

The parties conceded the facts. Five life insurance policies, containing aviation exclusion clauses, were issued in 1935 by The Mutual Life Insurance Company of New York, The Travelers Insurance Company, and Aetna Life Insurance Company on the life of Richard C. duPont, who was killed in a glider accident. Suits were instituted on the policies. Our CA 499 involved Mutual Life; CA 487–8 were brought against Travelers and CA 500 against Aetna. The same background facts related to all the policies; but the policies contained slightly different provisions as to coverage. The Mutual Life case was selected as the first and test case. Facts were stipulated, and defendant filed motions for summary judgment. Mutual Life's position was tentatively sustained. See, D.C.Del., 68 F.Supp. 83. Plaintiff then amended the complaint. Thereafter, on further motion and argument, summary judgment was entered for Mutual Life, D.C.Del., 76 F.Supp. 560. The Court of Appeals affirmed, 3 Cir., 177 F. 2d 404. Reargument before the Court of Appeals was denied. Certiorari was then denied by the Supreme Court of the United States, 339 U.S. 931, 70 S.Ct. 665, 94 L.Ed. 1351. Finally, plaintiff filed a "Renewed Petition for Rehearing" with the Court of Appeals. This was denied.

■ As the Mutual policies had been delivered in Wilmington, the substantive law of Delaware governed. The policies of Travelers and Aetna were delivered in New York, and I held they were governed by the law of that state. As in the Mutual Life case, in the Travelers and Aetna cases the same facts were stipulated, but each side reserved the right to object to any fact on the grounds of relevancy and materiality, and the parties reserved the right at trial to introduce additional evidence.

Prior to the jury trials in the Travelers and Aetna cases, the parties filed, once again, cross-motions for summary judgment. Defendants contended the Mutual Life decision controlled. Plaintiffs argued, as to the Travelers and Aetna cases, New York law controlled and, if the policies were ambiguous, the court should enter summary judgment against defendants; or in the alternative, the intent of the parties as to risk coverage was a fact question to be determined by a jury in each of the cases after trial. The motions for summary judgment were denied on the ground that, under New York law, the jury should resolve the question of ambiguity, which I found lurked in these particular policies, after examination of all the facts. At trial before the juries plaintiffs offered the stipulated facts in evidence. Defendants objected, as irrelevant, to paragraphs 26, 27 and 28 of the stipulation of facts, and such objection was sustained.[2] Defendants Travelers and Aetna then made a proffer of evidence relating to their underwriting practices. The purpose of this proof was to demonstrate Travelers and Aetna intended for many years to exclude military as well as civilian flying from coverage liability by the use of the phrase, in their policies, that no liability would attach where death occurred as a result of "service, travel or flight in any species of aircraft". Much of this evidence offered in the Travelers

70 S.Ct. 665, 94 L.Ed. 1351; Wilmington Trust Co. v. Travelers Ins. Co. (duPont v. Travelers Ins. Co., Wilmington Trust Co. v. Aetna Life Ins. Co.), D.C.Del., 109 F.Supp. 487, and a memorandum to counsel 5–8–53 involving certain evidence, discussed at pre-trial, which was either to be admitted or excluded.

2. In the memorandum to counsel of 5/8/53 (noted in n. 1, supra) defendants' objections to paragraphs 26, 27 and 28 were overruled (p. 5). Prior to jury trial defendants renewed objection to paragraphs 26 to 28, inclusive, on the ground these particular paragraphs concerned questions of incontestability, which were in the prior Mutual case, but which were no part of the Travelers and Aetna cases. At trial, when plaintiffs again offered in evidence paragraphs 26 to 28, inclusive, contained in the stipulation of facts, defendants objected again; and I ruled the facts stated in those three paragraphs were not relevant to the issues; and I so decided and instructed the jury to that effect (Tr. 12).

case I ruled should be excluded. In the Aetna case no objection was made by plaintiff to this species of evidence.

### I. The Travelers Policies

In connection with the two Travelers policies, the application which duPont signed for $100,000 of insurance showed he was a manufacturer of sail planes, and he made aerial flights. Thereupon he executed an "Aviation Supplement" which became a part of his application for insurance and which was attached to the policies. The questionnaire related to flying and was directed to both military and civilian aviation. Answers to the questionnaire disclosed duPont was the owner of a motor-driven plane and a pilot of both motor-driven planes and gliders or sail planes. Defendant Travelers was informed duPont had exhibited sail ships in soaring meets, had been active in creating interest in soaring, and he hoped the Navy or Army would give a large enough order to enable duPont to procure capital from his relatives to manufacture gliders.[3] After these facts were before it, Travelers issued two policies to duPont.[4] The first page of the policies contained the following provisions:

"This contract shall be incontestable after it shall have been in force during the lifetime of the Insured for a period of two years from its date of issue except for non-payment of premiums, and except for violation of the conditions of the contract relating to military or naval service in time of war if such service shall be restricted by indorsement hereon at date of issue. It is otherwise free from conditions as to residence, occupation, travel or place of death."

A rider was made part of the first policy. It was called "Supplemental Agreement" and "Special Provision as to Aeronautics", and provided:

"Death as a result of service, travel or flight in any species of aircraft, *except as a fare-paying passenger,* is a risk not assumed under this contract; but, if the Insured shall die as a result, directly or indirectly, of such service, travel or flight, the Company will pay to the beneficiary the reserve on this contract." (Emphasis added). The same "Supplemental Agreement" was made a part of the second policy, but the phrase "except as a fare-paying passenger" was omitted.[5] These riders were attached to page 3 of the policies. At the bottom of the first page of one of the policies, a stamped notice indicated the insurance was modified by the aircraft rider attached. An identical notice was also stamped on the other policy.

### II. The Aetna's Policy

At about the same time duPont filed his application with defendant Travelers, he applied to Aetna for $35,000 additional insurance. He executed a form entitled "Report on Aircraft Ascensions", wherein he gave the same information as to aviation and glider activities as had been disclosed to Travelers. Aetna sought information of duPont's connections with any Officers Reserve Corps, National Guard Air Service, flying or glider club, and whether he had flown during the past two years under these conditions. To these questions, duPont answered "Yes". On the first page of the Aetna policy the following notice was typewritten:

"This agreement is subject to special condition relating to aeronautics endorsed on the reverse of this page." Stamped on the back of page 1 and

3. PX 1, Stipulation, par. 20.

4. Both policies were first made payable to duPont's estate. Later, his widow, Allaire Crozer duPont, was substituted as beneficiary of one of the policies (involved in CA 488). His executor is plaintiff with respect to the other policy (involved in CA 487).

5. The difference in the two aviation clauses is this: In one policy the insurance company assumed the risk of death if duPont should die while flying as a fare-paying passenger. In the other, defendant refused to assume any aviation risk if death came as a result of flight in any species of aircraft, whether or not as a fare-paying passenger.

signed by Aetna's Secretary appears the following rider:

"Special Condition Relating to Aeronautics

"This policy is issued and accepted upon the express agreement that death of the insured as the result of service, travel or flight in any species of aircraft is a risk not assumed hereunder; but, if the insured shall die as a result, directly or indirectly, of such service, travel or flight, the Company will pay to the beneficiary the full reserve on this policy, less any indebtedness hereon.

"The provision regarding incontestability, hereinafter set forth, is hereby amended by adding thereto a provision that 'The defense, by the Company, of any claim hereunder on the ground that death of the insured was the result of service, travel or flight in any species of aircraft shall not be construed to be a contest of this policy.' "

The incontestable provision of the Aetna policy is printed on page 6 and reads as follows:

"This policy and the application herefor, a copy of which application is attached hereto and made a part hereof, constitute the entire contract between the parties hereto, and it shall be incontestable after it has been in force during the lifetime of the insured for a period of two years from its date of issue except for nonpayment of premium."

Stamped in large type by this paragraph appear the words:

"Amended See Back of Page 1"

At trial, evidence showed prior to 1930 defendant Aetna rarely issued policies which presented an aviation hazard. In 1930 it excluded all aviation risk. Between 1930 and 1942 the only form of aviation rider used by Aetna was the form attached to the duPont policy. It appeared that, in selecting the rider to be used, Aetna made no distinction between military and civilian flights; both were to be excluded from coverage and liability.

### III. The Circumstances of duPont's Death

duPont's tragic death was described by the Court of Appeals in the Mutual Life case, 3 Cir., 177 F.2d at page 405:

"In 1943 duPont became a 'special Civilian Assistant' to General Arnold of the Army Air Corps. He was placed in charge of the Army Air Corps Glider Program. A few months later while on a test flight in California in a glider piloted by a Colonel Gabel, duPont was forced to bail out and was killed when his parachute failed to open."

After duPont's death, defendants Travelers and Aetna paid the amount of the reserves of the policies to the beneficiaries named in all three policies.

### IV. The Directions for Jury Trials

As stated, I denied cross-motions of the parties for summary judgment prior to the submission of the cases to the juries. In my opinion found in, D.C. Del., 109 F.Supp. 487, 490, after reviewing the facts, I stated the question before me:

"Did the failure of the defendant insurance companies to exclude in their policies war risks from coverage render the aviation clauses ambiguous because the insured may have thought such aviation riders referred only to civilian flying?"

I concluded the policies were not plain contracts and could be said to contain ambiguities. I did not indicate what particular words or phrases created the ambiguity. I held, under New York law, as distinguished from Delaware law, the intention of the parties as to coverage was a fact question for the jury to decide. I concluded:

" * * * At this stage of the case, I think these are the questions for disposition by the fact-finders: 1. Are the aviation clauses referrable only to civilian flying? 2. what was the intention of the parties as to war flying coverage?"

### V. The Charge to the Jury

In the Travelers case, I summarized the facts and the basic contentions of the

parties. After instructing the jury New York law governed the interpretation of the policies, the jury was told:

"Under that law, when a contract is ambiguous, that is to say, when reasonable men could take different views as to its meaning, that meaning in an action at law is to be ascertained by the jury from a consideration of the contract itself, and of the situation of the parties at the time when it was made, and of all the circumstances under which the contract was made.

\* \* \* \* \* \*

"I say to you that these contracts as reflected in the two insurance policies here in suit are not plain unambiguous contracts. It therefore lies with you to ascertain the meaning of the policies in the light of the respective situations of the contracting parties and of all the circumstances in which the policies are made."

The jury was also told when ambiguities appear in life insurance policies, such ambiguities must be resolved in favor of the beneficiaries; and the provision as to aeronautics in the policy in suit was doubtful. The question left to the jury was the meaning of the words: "death as a result of service, travel or flight in any species of aircraft is a risk not assumed \* \* \*".

■■■ 1. Two independent conclusions prompt relief for defendants under F.R. 50(b). On the assumption the insurance contracts were ambiguous, plaintiffs were entitled under New York law—the law governing the policies—to introduce extrinsic evidence to aid the juries in resolving that ambiguity. Theirs was the burden of proving, however they could, facts resolving the ambiguous language to mean insurance coverage for duPont. Full opportunity of doing so was given plaintiffs, and favorable instructions given the juries. However, an examination of all the record evidence shows it of no weight in sustaining plaintiff's burden or resolving the ambiguity. Had the juries rendered verdicts favorable to plaintiffs, I would have been obliged to set them aside and enter judgments notwithstanding the verdicts in favor of defendants. That no verdicts came from the "hung juries" does not alter my duty under F.R. 50(b). Under this state of the evidence, the case should not have reached the jury. That it did does not affect the applicability of F.R. 50(b). Therefore, I deem it proper to enter a final judgment for defendants in each case in accordance with the motions for directed verdicts.

■■■ 2. A like decision is reached by another line of reasoning which does not assume the existence of an ambiguity in the insurance policies. The written contract is primarily construed in the light of its own language. This is a foundation stone of the objective theory of contracts. When a party complains of ambiguity in the instrument, the court, and not the jury, has the responsibility of deciding whether or not there actually is ambiguity. In most instances, only the instrument itself is consulted in resolving this threshold problem. Extrinsic evidence is usually proper only after the existence of ambiguity has been ascertained and then for the purpose of resolving it. Likewise, a jury is presented with the resolution of ambiguity only, of necessity, after the court has found it does exist in the instrument. Preliminary to the trials, I concluded the policies—the inter-relationships of all their provisions being considered and not merely the clause of excluded risks—were not plain, unambiguous contracts in that they did need the enlightening benefits of outside evidence of their intended meaning. That there was such evidence readily available I then had no doubt. The propriety of its introduction under New York law was discussed in the prior opinion, 109 F.Supp. 487, supra. Under adequate instructions, the juries were given the resolution of the ambiguous provisions. They could not agree. Careful review of the record convinces me the extrinsic facts offered were very weak,

barely relevant, and of no assistance in deciding the issue.[6] The juries' plight was understandable. When there is no helpful evidence aliunde, where does one turn in this dilemma? There is only one recourse—the instrument itself. And the jury can no more be saddled with the burden of construing the bare instrument than with deciding in the first instance upon the existence of the ambiguity. Sheer guesswork, there being no evidence of any value, would comprise the jury's deliberations. Knowing now there is no expectation of help from extrinsic evidence, I am faced with the non-delegable duty of construing the policies as a matter of law. Within their four corners are my only aids to their construction. The duty under these circumstances would be the same under the law of any of the applicable forums and

is unaffected by the conflict of laws question. Under both New York law and the law of the federal forum the court must apply the words used in accordance with their meaning within the framework of the insurance contracts themselves.

The situation is not wholly without hope and outside guidance, nor am I pushed to the extreme of calling the turn of a coin, as might a jury. Without consideration of extrinsic evidence reflecting the contracting parties bargain, many courts have held exclusion clauses like those in the policies in suit to be unambiguous as a matter of law, and judgments were entered for insurance companies. Durland v. New York Life Ins. Co., 186 Misc. 580, 61 N.Y.S.2d 700; Horrmann v. Prudential Ins. Co., 192 Misc. 758, 81 N.Y.S.2d 218; and see cases in note.[7] In the Durland case, the

6. Plaintiffs' primary contention in the Travelers and Aetna cases was extrinsic evidence of facts and circumstances, not contained in the stipulation of facts, raised doubt whether in using the words "service, travel or flight in any species of aircraft", duPont, the insured, and defendant insurance companies had in mind the possibility of military flying. Plaintiffs argued the United States was at peace when the policies were written; Travelers was not then using a war risk clause; duPont was not in military service, and he was a manufacturer of sail planes, hoping some day to make gliders for the Army or Navy. Based on this, it was claimed he contemplated future military flying and might have thought the aviation rider referrable only to civilian flying since one of the policies gave coverage to a fare-paying air passenger. The Aetna policy had no fare-paying passenger provision. Equivocal generalities, for the most part, in statements to the juries, were the only extrinsic evidence offered besides the stipulated file of facts.

7. Contention aviation riders similar or identical to those in the policies in suit, were ambiguous, absent sufficient extrinsic evidence of intention of the parties, was not accepted in the following cases:

In Green v. Mutual Benefit Life Ins. Co., 1 Cir., 144 F.2d 55, plaintiff demanded a jury trial. Subsequently the parties filed a stipulation of facts and each party moved for summary judgment.

The District Court entered summary judgment for the defendant insurance company and was affirmed on appeal.

In Knouse v. Equitable Life Ins. Co. of Iowa, 163 Kan. 213, 181 P.2d 310, 314, a trial was held at which no evidence was offered except one exhibit. The trial court took the matter under consideration and later ordered judgment in favor of the plaintiff-beneficiary. The Supreme Court reversed and directed judgment to be entered for the insurance company.

In McKanna v. Continental Assur. Co., 165 Kan. 289, 194 P.2d 515, 517, plaintiff demurred to defendant's answer. The lower court decided the interpretation question as a matter of law, overruled the demurrer and was sustained on appeal.

Hyfer v. Metropolitan Life Insurance Co., 318 Mass. 175, 61 N.E.2d 3, was decided by the Massachusetts Supreme Court on a report sent to it without decision by the trial court. The Supreme Court held as a matter of law judgment must be rendered for the defendant insurance company.

In Janco v. John Hancock Life Ins. Co., 164 Pa.Super. 128, 63 A.2d 138, the trial court entered judgment on the pleadings for plaintiff-beneficiary. On appeal, the Pennsylvania Superior Court reversed this decision and directed judgment be entered for defendant.

In Burns v. Mutual Life Ins. Co. of Newark, D.C., 79 F.Supp. 847, affirmed per cur., 6 Cir., 179 F.2d 236, the parties stipulated the material facts. The

New York Court was confronted with an argument identical with plaintiffs' contention the "service, travel or flight" clause in the Travelers policies excepted only civilian flying risks. The New York Court found to the contrary; the Aviation Supplement's questions about military flying, which insured there answered, constituted strong evidence to that Court the risks of military flying were intended to be excluded from coverage by both parties. Here an Aviation Supplement and "Report on Aircraft Ascensions" were furnished duPont, and he answered the many questions in them specifically directed to military flying. Both were incorporated by reference in the policies. As in the Durland case, this objectively shows an awareness of both parties that military as well as civilian flying hazards were not insured risks. Other courts have found from an examination of documents military flying hazards were excluded from coverage under provisions similar to those in the policies here in suit. Green v. Mutual Benefit Life Ins. Co., 1 Cir., 144 F.2d 55; Knouse v. Equitable Life Ins. Co. of Iowa, 163 Kan. 213, 181 P.2d 310, 314. Horrmann v. Prudential Ins. Co., 192 Misc. 758, 81 N.Y.S.2d 218, is significant. That case was not previously cited to this court by either party, and it would seem to dispose of plaintiffs' main, if not sole, authority as to New York law—Paradies v. Travelers Ins. Co., 183 Misc. 887, 52 N.Y.S.2d 290. It appears when a policy

contains provisions excluding liability for death resulting from service, travel or flight in any species of aircraft, such service in any species of aircraft covers war service, not merely civilian travel or flying.

In short, while I found in the early stages of the litigation there might be said to be ambiguities in the policies and such should be resolved by the juries upon a consideration of the policies' provisions, the stipulation of facts, the situation of the parties, and all the circumstances surrounding issuance of the policies, plaintiffs have failed to sustain, even by extrinsic evidence and proffer of proof, their claimed construction of the policies. Where opportunity was given to offer extrinsic evidence, and such evidence as was offered was of no help in assisting the jury to resolve the question, then I think it is the function of the court to apply and construe the language of the policies. The result thus reached in denying recovery under the policies is the same, whether the Mutual Life case, or Delaware law, or New York law, or the internal law of the federal forum, is applied.

 My decision may be challenged on the ground once an ambiguity was found to exist it remains, regardless of the inability of two juries to reach a decision on the proper meaning of the policies' coverage. Such challenge has no validity in view of the twin grounds of decision and the ratio behind them.

trial court granted summary judgment for defendants (or, to be accurate, judgment for plaintiffs for the reserve on the policy only).

In Thoma v. New York Life Ins. Co., 30 North Co., Pa., 369, the parties filed a stipulation of facts. The court entered judgment for plaintiff for the reserve on the policies.

In United Services Life Ins. Co. v. Bischoff, 86 U.S.App.D.C. 328, 181 F.2d 627, 628, the trial court entered judgment for plaintiff-beneficiary. The Court of Appeals reversed, holding judgment must be entered for the defendant insurance company as a matter of law— "There can be no recovery in this suit."

In Mutual Life Ins. Co. v. Daniels,

125 Colo. 451, 244 P.2d 1064, there was a jury trial. At the conclusion of plaintiff's evidence counsel for defendant moved for a directed verdict awarding to plaintiff the reserve rather than the face amount of the policy. Counsel for plaintiff moved for a directed verdict for the face amount of the policy. The trial court denied defendant's motion for a directed verdict and entered judgment for plaintiff for the full face amount of the policy. The Supreme Court reversed, holding as a matter of law, the aviation rider disentitled plaintiff to recover and judgment must be rendered for the insurance company in accordance with its motion for a directed verdict.

528

Plaintiffs were given an opportunity by jury trials to adduce proof demonstrating the policies were intended by the parties to have a meaning other than that found in the language of the policies themselves. My decision is plaintiffs totally failed to adduce proof at the trials that military flight was to be included in the coverage of the policies. Accordingly, I have returned to the policies and, interpreting provisions of exclusion mutually agreed upon by the contracting parties, I conclude there was to be no coverage of either civilian or military flight in the Travelers policies (save for fare-paying passenger flights) and no coverage at all for any type of flight in the Aetna policy.

The motions of defendants for judgments in accordance with their motions for directed verdicts under F.R. 50(b) will be granted. An order may be submitted on notice.